·THE STATE, PLAINTIFF IN ERROR, v. COPELAND.

1.   **Jeopardy:** DISCHARGE OF JURY FOR FAILURE TO AGREE: CRIMINAL PRACTICE.   The discharge, by the Court, without defendant's consent, of a jury to whom a criminal case has been submitted, and who have failed to agree on a verdict, does not operate an acquittal or entitle him to a discharge.   He has not been put in jeopardy within the meaning of the constitution, so as to bar a second trial for the same offense.

2.   **A Writ of Error** does not lie on behalf of the State in any criminal case  (construing Wag. Stat. 1114 §§ 13, 14, 1, 2 ; and overruling *State v. Newkirk*, 49 Mo. 472 and *State v. Peck*, 51 Mo. 111.)

*Error to Dent Circuit  Court.*—HON..V. B. HILL, Judge.

*J. L. Smith, Attorney  General*, for  the  State, cited *State v. Jeffors*, 64 Mo. 376 ;  *State v. Matrassey*, 47 Mo. 295 ; *State v. Newkirk*, 49 Mo. 472.

*C. C. Bland*, for defendant in error.

1.   Jeopardy attaches when the traverse jury is empanelled.   1st Bishop's Crim. Law, secs. 658*a*, 658*b*, 659 : *Commonwealth v. Cook*, 6 S. & R. 517 ;  *State v. McKee*, 1  Bailey 651 ;  *Cobia v. State*, 16  Ala. 784;  *McFadden v. Commonwealth*, 23 Pa. St. 12 ;  *Lee v. State*, 26  Ark. 260 ;  *Commonwealth v. Tuck*, 20  Pick. 356 ;  *Clark v. State*, 23  Miss. 261 *U. S. v. Stenell*, 2  Curt. C. C. 153 ;  *Rex v. Wade*, 1  Moody Brit. Crown  Cas. 86 ;  *Newsom v. State*, 2  Ga. 60 ;  *State v. Redmon*, 17  Iowa  329, 333;  *State v. Walker*, 261  Ind. 346.

2.   The court has  the  right  to  discharge  the  jury  for

failure to agree, but this fact must be judicially determined.  1 Bishop Crim. Law secs. 668a, 668b, 668c and 669

3.   The discharge of the jury in this case without the consent of defendant and in his absence and without any necessity for their discharge operated as a discharge of the prisoner, and is equivalent to a verdict of not guilty. *People v. Ward*, 2 Caines 100, 304; *Hines v. State*, 24 Ohio St. 134; *State v. Wilson*, 50 Ind. 487; *O'Brien v. Commonwealth*, 9 Bush. 333; *People v. Cage*, 48 Cal. 323; *Ex. Parte Ruthven* 17 Mo. 541.

SHERWOOD, C. J.—The defendant, indicted for murder in the first degree, pleaded in bar of further prosecution that he had been in April, 1874, put upon his trial and in jeopardy, under the indictment, that the jury had retired to consider of their verdict, but that before the jury had made any verdict, before the end of the term, without consent of the defendant, without good cause or reason, without providential interposition, or any other cause which should in law subject the defendant to be again put in jeopardy, the court discharged the jury.   A like occurrence, alleged as having taken place under the same indictment in December, 1875, and with a similar result under similar circumstances, was also pleaded in bar.   The first trial commenced April 8th, 1867, continued for two days, or until the 10th day of that month, when argument of counsel was heard and it seems the jury retired to consider of their verdict; at any rate the jury came again into court on the 14th day of the month and, "having failed to agree upon a verdict," were by the court discharged.   The second trial began on the 9th day of December, 1875 (at an adjourned term), continued in progress until the 13th of that month when arguments of counsel were heard, which arguments were continued on the 14th day of the month, when it seems the jury retired to consider of their verdict.   On the 15th day of the month the jury again came into court, and, making "report that they

cannot agree," were by the court discharged. The last entry announcing the discharge of the jury differs from the first in that it affirmatively asserts the presence of the prisoner. The plea in bar proved successful and the defendant was discharged. The State, after vainly endeavoring to set the order of discharge aside, brings the cause here by writ of error.

We regard the ruling mentioned erroneous; and for these reasons: It sufficiently appears that the jury, both in the first and in the second trial were unable to agree, shown as it is by the record recital of the fact in one instance that they "failed to agree upon a verdict," and in the other that they "report that they cannot agree." These expressions we must deem as legal equivalents of each other, and each also as expressive, inferentially, of the idea that further detention of the jury was, in the opinion of the court, altogether futile, since their discharge immediately upon the coming in of their report occurs. At the time when the discharge of the first jury occurred, section 19 of the Declaration of Rights of the Constitution of 1865 was in force "that no person after having been once acquitted by a jury, can, for the same offence, be again put in jeopardy of life or liberty; but if, in any criminal prosecution, the jury be divided in opinion, the court before which the trial shall be had, may in its discretion, discharge the jury and commit or bail the accused for trial at the next term of said court." The 23d section of our present Bill of Rights, correspondent to the one just quoted, and which was a part of the organic law at the occurrence of the second trial, is eqally broad in the scope of discretionary power which it confers on the trial court. But we are asked on the meager record recitals to which we have adverted to assume that the defendant was put " in jeopardy " within the meaning of the constitution by reason of the discharge of the jury not appearing to have been with the consent of prisoner, and by reason of such discharge occurring without the existence of other circumstances to which the plea makes ref-

1. JEOPARDY: Discharge of Jury for failure to agree: Criminal Practice.

erence.  This is an assumption we are not prepared to make.  On the contrary, we must take for granted, in the absence of aught of record in opposition thereto, that the discretion which the constitution manifestly confers, was not unsoundly exercised.  If this be true, then it can but follow that the defendant had not been put "*in jeopardy*" and that his plea should not have been successful.  In the case of the *State v. Jeffors*, 64 Mo., 376, the record did not show any discharge of the jury, and it was claimed that the prisoner was entitled to his discharge on the ground that he had been once put in jeopardy.  But it was there held, after no little examination of authorities, that the motion for the discharge of prisoner was properly overruled.  This case rests on more obvious grounds, so far at least as concerns record recitals ; for here the inability of the jury to agree is plainly apparent.

Confining ourselves to the case before us and not anticipating what our course would be, should a case arise 2. A WRIT OF ER- exhibiting marked manifestations of an ROR. abusive exercise of that discretion which the constituton confers on the trial court, we should reverse the judgment and remand the cause, but for the fact that we do not regard the State as possessing any right whatever to come here in this particular case, or indeed in any criminal case, through the medium of a writ of error. Secs. 13 and 15 of article 8, Tit. Prac. Crim. cas. (2 Wagner's stat. 1114) are as follows: Sec. 13.  "The State in any criminal prosecution shall be allowed an appeal only in the cases and under the circumstances mentioned in the next succeding section."  Sec. 14.  "When any indictment is quashed or adjudged insufficient on demurrer, or when judgment thereon is arrested, the court in which the proceedings were had, either from its own knowledge or from information given by the prosecuting attorney, that there is reasonable ground to believe that the defendant can be convicted of an offense if properly charged, may cause the defendant to be committed or recognized to answer a new

indictment, or if the prosecuting attorney prays an appeal to the Supreme Court, the court may in its discretion grant an appeal." It will thus be readily observed that an appeal is only allowable to the State, 1st, where the indictment is quashed; 2d, where it is held insufficient upon demurrer; 3rd, where the judgment thereon is arrested, and even then the right of appeal is hampered in its exercise by the *discretion* of the trial court. Now, it is altogether beyond the range of sensible supposition that the legislature would so sedulously restrict and narrowly confine the *right of appeal* when the State is to be the appellant, and yet give unbounded license of bringing up causes by means of a *writ of error*. Under such a latitudinous construction, the prosecuting attorney denied an appeal by the circuit court in the exercise of its statutory discretion, might, in defiance of such refusal, successfully sue out his writ of error and thus gain by an indirection that which could be by no possibility directly accomplished. The case of the *State v. Newkirk*, (49 Mo. 472,) has been called to our attention as upholding the idea that a writ of error lies in behalf of the State in cases like the present. The point in that case seems to have been but lightly considered. That decision rests its whole weight on section 2 of the article already mentioned, utterly ignoring the other sections and failing to construe section 2 in connection therewith. The first section of the article in question provides : " In all cases of final judgment rendered upon any indictment, an appeal to the Supreme Court shall be allowed the defendant if applied for during the term at which such judgment is rendered," and section 2, to which comment is exclusively confined in *State v. Newkirk*, *supra*, provides that " writs of error upon any such final judgment are writs of right, and on application therefor shall issue of course, in vacation as well as in term, out of the court in which by law they may be made returnable," and section 3 provides, " no such appeal or writ shall stay or delay the execution of such judgment or sentence unless the Supreme Court

or a judge thereof, or the court in which the judgment was rendered, or the judge of such court, on inspection of the record shall be of opinion, etc., and shall make an order expressly directing that such appeal or writ of error shall operate as a stay of proceedings on the judgment."

It is quite obvious that the first section limits the right of appeal to the defendant and where final judgment has been rendered against him. And it must be equally obvious that section 2 limits the issuance of writs of error to those cases alone, where there has been "such final judgment," i. e., a judgment against the defendant and none other. And section 3 fully bears out and adds confirmation to the same idea by providing that "no such appeal or writ shall stay or delay the execution of such judgment or sentence unless" etc. If the State is either appellant or plaintiff in error, obviously there is neither judgment or sentence to be stayed. And the view here asserted as to the inability of the State to sue out a writ of error in this class of cases finds abundant support in other sections of the same article, which, while making frequent mentions of appeals and writs of error in behalf of the party indicted, never mentions anything in that connection in behalf of the State except an appeal.

Again, section 15 of the same article, makes provision when an appeal is granted the State for committing or recognizing the defendant until the judgment of the Supreme Court can be had, thus securing his attendance in the event of the State securing a reversal of the judgment. But if the opposite theory is to prevail; if the State can come up by writ of error, there is no provision which will secure the presence of the defendant anew in the lower court or prevent such reversal from being more than a barren formality so far, at least, as security for future attendance is concerned. In the case of the *State v. Spear*, (6 Mo. 644,) on appeal by the State, it was stated, *arguendo*, that a writ of error would lie also under similar circumstances; but that point was not before the court and Tompkins, J., dissent-

ing, denied that the statute conferred even a right of appeal on the State.   At that time, 1840, the statutes of 1835 were in force, and the first section of article 8 (p. 497), respecting practice in criminal cases, is as follows:  "In all cases of final judgment rendered upon any indictment, an appeal to the Supreme Court shall be allowed, if applied for during the term at which such judgment is rendered." Sections 2 and 3 are as they are at present.   In 1845, however, the legislature changed the law into, so far as it concerns the case at bar, its present shape, giving the defendant the sole right of appeal under section 1, and explicitly restricting the State's appeal under sections 13 and 14, *supra*.   These changes, taking place so soon after judicial announcement that the State, in like manner as the defendant, could come up as well by writ of error as appeal, must be regarded as possessing marked significance, showing that the Legislature intended thereafter to restrict the State's bringing up causes within the precise limits specified in sections 13 and 14.   These considerations induce the overruling of *State v. Newkirk, supra,* and also that of the *State v. Peck,* (51 Mo. 111) which followed in its wake.   Holding, as we do, that no writ of error lies in favor of the State, we dismiss the writ.   All concur.

WRIT DISMISSED.