(No. 21130.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff in Error, *vs.* WALTER BARBER, Defendant in Error.

*Opinion filed February 19, 1932—Rehearing denied April 20, 1932.*

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

BENJAMIN C. BACHRACH, for defendant in error.

Mr. JUSTICE ORR delivered the opinion of the court:

This writ of error is sued out by the People to reverse a judgment of the criminal court of Cook county quashing an indictment for bigamy against the defendant in error.

In quashing the indictment the trial judge held that it had failed to describe the parties or subject matter with sufficient certainty. It is not contended that the defendant had been placed in jeopardy before the entry of the judgment quashing the indictment. The sole question presented is whether the State has the right in a criminal case to sue out a writ of error to reverse a judgment quashing an indictment, in view of statutory provisions to the contrary.

In 1845 the legislature passed a statute prohibiting the issuance of a writ of error on behalf of the People in a criminal case. If we are to now hold that such a writ will lie we must necessarily hold that this statute is unconstitutional. This statute (Smith's Stat. 1931, chap. 38, par. 747,) is as follows: "Exceptions may be taken in criminal cases, and bills of exceptions shall be signed and sealed by the judge, and entered of record, and error may be assigned thereon by the defendant, the same as in civil cases: Provided, that in no criminal case shall the People be allowed an appeal, writ of error or new trial." This statute expressly gives the defendant the right to assign errors upon exceptions, but no provision is made for exceptions or assignments of error on the part of the People and it explicitly denies to the People any appeal, writ of error or new trial in a criminal case.

It is contended by the People that sections 2 and 11 of article 6 of the constitution of 1870 contain provisions which should be construed so that this court has the power to review the judgment of a trial court quashing an indictment. The pertinent language of these sections is:

"Sec. 2. The Supreme Court shall consist of seven judges, and shall have original jurisdiction in cases relating to the revenue, in *mandamus* and *habeas corpus,* and appellate jurisdiction in all other cases," etc.

"Sec. 11. After the year of our Lord, 1874, inferior appellate courts, of uniform organization and jurisdiction, may be created in districts formed for that purpose, to

which such appeals and writs of error as the General Assembly may provide may be prosecuted from circuit and other courts, and from which appeals and writs of error shall lie to the Supreme Court, in all criminal cases, and cases in which a franchise or freehold or the validity of a statute is involved, and in such other cases as may be provided by law," etc.

The People contend that the words "appellate jurisdiction in all other cases," used in section 2 above, and the words "and from which appeals and writs of error shall lie to the Supreme Court, in all criminal cases," used in section 11, mean what those terms meant at the common law. Even if we could determine with any certainty just what the English common law was upon this subject—a task which has puzzled eminent jurists and commentators—we would still be confronted with our own statute. This statute has stood unchallenged as the existing law of this State for nearly a century. Its provisions are certain and have not been misunderstood.

Before considering our own statute and constitution it is of moment to note the diversity of views which prevails concerning the common law on this subject. Thus, in *State of Florida* v. *Burns,* 18 Fla. 185, (decided in 1881,) it was held that the State was not entitled to a writ of error to reverse the judgment of the circuit court quashing an indictment. There, after holding that New York, Arkansas and Maryland were the only States which had granted the People the right in a criminal case to sue out a writ of error after judgment, the court said: "In all other States the right of the State to the writ is denied. The weight of authority is overwhelming, not only in this country but in England, that the writ will not lie at the instance of the State, and it is evident from the character of the legislation on the subject in this State that it has never been contemplated that the State could further pursue parties who had obtained judgment in their favor in prosecutions by indict-

ment, whether by the judgment of the court or verdict of a jury."

It is the consensus of judicial opinion that the sole function of a writ of error at common law was to bring up for review errors appearing on the face of the record. In *Rex* v. *Wilkes,* 4 Burr. 2550, Lord Mansfield *inter alia* said: "Till the third of Queen Anne a writ of error in any criminal case was held to be merely *ex gratia.* * * * But in the third of Queen Anne ten judges were of the opinion that in all cases under treason and felony a writ of error was not merely of grace but ought to be granted. It cannot issue now without a fiat from the Attorney General, who always examines whether it be sought merely for delay or upon a probable error. * * * In a misdemeanor, if there be a probable cause, it ought not to be denied. This court would order the Attorney General to grant his fiat. But, be the error ever so manifest in treason or felony, the king's pleasure to deny the writ is conclusive." The headnote to the case *In re Pigott,* 11 Cox's Crim. Cas. 311, (decided in 1868,) reads: "The granting of a writ of error is part of the prerogative of the crown. If, therefore, the Attorney General of England or the Lord Lieutenant of Ireland refuse to grant it, the Lord Chancellor has no jurisdiction to review that decision."

It seems that the writ was never granted except when the king, from justice when there really was error or from favor where there was no error, was willing that the judgment should be reversed. The Attorney General never made any opposition after the writ of error was granted, either because he had certified there was error and could not argue against his own certificate, or the crown meant to show favor, and then he had orders not to oppose. The king, who had the absolute power of pardon, having thus expressed his willingness that the judgment should be reversed, the court reversed it upon very slight and trivial objections which could not have prevailed if any opposition

had been made or if the precedent had been of any consequence. (1 Bishop on Crim. Proc. (2d ed.) par. 1191.) Thus it will be seen that under the English practice a writ of error did not issue as a matter of course upon the application of a convicted defendant, but that the writ was resorted to by the crown to show favor to a convicted person and to bring about a reversal of the judgment against him. And it does not appear that the writ was ever used by the Attorney General in England to reverse a judgment of acquittal until 1841, in the case of *Regina* v. *Houston,* 2 Craw. & Dix, 191. Prior to that time we have been unable to find a single reported case in England, and none has been cited to us, where the king has brought error after a judgment of acquittal. Prior to 1841 all reported cases examined by us where the king has brought error after a judgment have been those cases wherein the judgment was against, and not in favor of, the defendant. In *Regina* v. *Millis,* 10 Cl. & F. 534, (decided in 1843,) and *Regina* v. *Chadwick,* 11 Q. B. (new series) 205, (decided in 1846,) the right of the crown to sue out a writ of error to reverse a judgment of acquittal was affirmed. Prior to these decisions, however, such right, if it existed in England, must be assumed merely from inferences and dicta. There is a saying of Lord Coke (3 Inst. 214) from which an inference may be drawn in favor of the right of the crown to bring error in a criminal case, and there are several passages in an opinion of Lord Hale (2 P. C. 247, 248, 394, 395,) from which like inferences may be drawn, but nothing is directly affirmed on the subject by either of these learned commentators. An examination of *Regina* v. *Houston, Regina* v. *Millis* and *Regina* v. *Chadwick* shows that in none of these cases was the question raised as to the right of the Attorney General to sue out the writ. Because of this failure it is argued by the People that it must be an accepted fact that the right of the crown to take the writ in case of an acquittal was indisputable. To a similar

contention made in the celebrated case of *People* v. *Corning*, 2 Comst. (N. Y.) 9, (decided in 1848,) dealing with this same question before the legislature of New York had passed a statute (1852) specifically authorizing the State to sue out writs of error in such cases, the court held: "The weight of authority seems to be against the right of the government to bring error in a criminal case. The absence of any precedent for it, either here or in England, until within a very recent period, fully counterbalances, if it does not outweigh, the fact that the right has lately been exercised in a few instances without objection, and in three of the four States where the question has been made the courts have decided that the right does not exist." Archbold, speaking in 1844 of cases wherein a writ of error will lie in England, says judgment must have been given on an indictment and it must be a judgment against the defendant, for there is no instance of error being brought upon a judgment for a defendant after an acquittal. 1 Archbold on Crim. Pl. & Pr. (8th ed.) p. 623.

In this country it is almost uniformly held that the writ will not lie at the instance of the State without a statute clearly conferring the right. (*State* v. *Jones,* 7 Ga. 422; *People* v. *Corning, supra; Commonwealth* v. *Cummings,* 3 Cush. (Mass.) 212; *State* v. *Reynolds,* 4 Hayw. (Tenn.) 110; *Commonwealth* v. *Harrison,* 2 Va. Cas. 202; *State* v. *Kemp,* 17 Wis. 690; *State* v. *Burns, supra; State* v. *Copeland,* 65 Mo. 497; *People* v. *Raymond,* 18 Colo. 242.) The right exists only when conferred by statute, and by "one expressed in the most plain and unequivocal terms, such as cannot be turned by construction to any other meaning." (*State* v. *Reynolds, supra.*) In *United States* v. *Sanges,* 12 Sup. Ct. 609, Mr. Justice Gray, after an extended and thorough review of the decisions upon this question by the courts of England and this country, says: "The decisions above cited conclusively show that under the common law as generally understood and administered in the

United States, and in the absence of any statute expressly giving the right to the State, a writ of error cannot be sued out in a criminal case after a final judgment in favor of the defendant, whether that judgment has been rendered upon a verdict of acquittal or upon a determination by the court of an issue of law."

Even if the doubtful assumption be made that it was the practice in England for the Attorney General to take a writ of error in a criminal case after the defendant was acquitted, it must be conceded that the exercise of this power sprang from a governmental policy to carry out the royal prerogative of the king and was used either to favor or oppress a subject. A royal prerogative of this sort could never be incorporated into the laws of this State. In our Federal and State constitutions the rights of the people were not left to the mercy or whim of any sovereign but were especially stated and reserved in order to make the people as secure as possible against oppression.

As was previously pointed out, in 1845 the legislature passed a statute denying a writ of error to the People in a criminal case. This statute evidences a purpose of the legislature to change the common law, if any existed to a certainty on this subject, or, if the common law was uncertain, to make it certain that in Illinois writs of error in criminal cases could not be sued out by the State. No exceptions were made by the legislature as to cases where the defendant had not been put in jeopardy. It is not contended that the words used were uncertain or of doubtful meaning. The constitution did not forbid such a change, and all legislative power not constitutionally prohibited rests in the legislature.

A doubt has been suggested as to the constitutionality of this statute. In support of this contention the People have adverted to the wording of sections 2 and 11 of article 6 of the constitution of 1870, referring to the "appellate jurisdiction in all other cases," mentioned in section 2, and to

the wording of section 11 that "writs of error shall lie to the Supreme Court in all criminal cases," etc. But nothing contained in either of these two sections of the constitution or in the Practice act gives any right of appeal to the State in a criminal case. Section 11 refers particularly to the creation of appellate courts by the General Assembly and prescribes their jurisdiction, and the whole section, rather than a mere phrase, must be read to properly understand its meaning. The meaning of section 11 was explained in *Smith* v. *People,* 98 Ill. 407, where Justice Scholfield, speaking for the court, held: "Section 11 of article 6 of the constitution of 1870, providing for the creation of 'inferior appellate courts,' declares that writs of error shall lie to such courts from this court 'in all criminal cases.' This is a criminal case, though below the grade of felony. The writ of error to the Appellate Court in such cases is a writ of right under the constitution, of which the party cannot be deprived by legislation. Section 88 of the Practice act, as amended in 1879, requires 'all criminal cases below the grade of felony' to be taken directly from the trial courts to the Appellate Court, but this requirement does not operate to deprive the party charged with any criminal offense of his right to a writ of error from this court, nor does it take away the jurisdiction of this court to entertain the writ." It will be noted that in this decision no mention is made of any right of the People to a writ of error, but the right mentioned is that of a "party charged with any criminal offense." Under this constitutional provision the General Assembly has the power to prescribe the appeals which may be taken to and the writs of error which may be prosecuted from the Appellate Courts. (*Murray* v. *Hagmann,* 315 Ill. 437.) Section 11 provides for the creation of appellate courts "to which such appeals and writs of error as the General Assembly may provide may be prosecuted from circuit and other courts, and from which appeals and writs of error shall lie to the Supreme Court, in all criminal cases," etc. This

provision in the constitution of 1870 was not a denial of the future right of the legislature to prescribe, as it had done twenty-five years earlier, the persons to whom appeals and writs of error should be allowed.

In the celebrated case of *United States* v. *More,* 3 Cranch, 159, (decided in 1805,) the same contention was made as is now made before us. There it was argued that while a writ of error had not then been authorized by any act or the constitution in a criminal case, the power to issue such writs was necessary for the exercise of the appellate jurisdiction given to the Supreme Court by the constitution; that there was no reason why the writ of error should be confined to civil cases, as a man's life, his liberty and his good name are as dear to him as his property, and that writs of error have been frequent in criminal cases "in that country from which we have drawn almost all our forms of judicial proceeding." In that case Chief Justice Marshall, in dismissing the writ of error, said: "If Congress had erected inferior courts without saying in what cases writ of error or appeal should lie upon such courts to this, your argument would be irresistible; but when the constitution has given Congress power to limit the exercise of our jurisdiction and to make regulations respecting its exercise, and Congress, under that power, has proceeded to erect inferior courts and has said in what cases a writ of error or appeal shall lie, an exception of all other cases is implied. And this court is as much bound by an implied as an express exception." Thus it will be seen that the jurisdiction of the Supreme Court of the United States to review judgments of inferior courts quashing indictments was not originally entertained but now exists solely by virtue of an act of Congress authorizing appeals and writs of error for that purpose. In Illinois we find the opposite of this situation, for here the legislature has specifically provided "that in no criminal case shall the people be allowed an appeal, writ of error or new trial." And it will likewise be found,

according to the weight of authority, that the People will be permitted to review a judgment in favor of the defendant by which an indictment is quashed or held bad on demurrer only in those States where the power is expressly conferred by statute or arises by necessary implication, and then only in the instances specified and enumerated. (17 Corpus Juris, p. 41.) To the same effect, Bishop, in his work on Criminal Law, (vol. 1, 9th ed. sec. 1024, p. 757,) says: "In most of our States the courts refuse them [writs of error], as well as appeals, to the prosecuting government except where expressly authorized by statute. In Maryland the State may have a writ of error at common law to reverse a judgment given on demurrer in favor of a defendant. In some other States questions of law may, without specific statutory direction, be reviewed by this proceeding or by appeal on the prayer of the State. This question is more or less affected by statutes."

We have carefully examined the cases cited by counsel for the People, a large proportion of which were jury trials, which it must be conceded are not applicable in support of the doctrine in issue. In the remaining cases, those cited from North Carolina, Pennsylvania, Maryland, South Carolina, New Jersey, Louisiana, Arkansas, Ohio and Michigan are from States where writs of error to the People in criminal cases are authorized by statute. In Utah and Ohio the wording of the constitution is such as to permit appeals and writs of error in criminal cases by the People. Other cases cited, particularly *State* v. *Tolls,* 13 Tenn. 363, and *State* v. *Meade,* 4 Blackf. (Ind.) 309, are clearly inapplicable. In the Tennessee case no question was raised as to the right of an appeal or writ of error, while in the Indiana case the defendant waived a jury and was tried and acquitted by the court on the merits. It is not even argued that under the constitution of this State the People would have a right to a writ of error under similar circumstances.

While the question here involved has not been directly raised or passed upon in any former decision of this court, it was held in *People* v. *Dill,* 1 Scam. 257, (decided in 1836,) and likewise in *People* v. *Royal,* 1 id. 557, (decided in 1839,) that the State cannot prosecute a writ of error in a criminal case. Both of these decisions were made prior to the adoption of the statute in question, which directly and expressly provided, without exceptions, "that in no criminal case shall the People be allowed an appeal, writ of error or new trial." This statute does not conflict with our constitution, and the legislature by its enactment was exercising an authority not denied to it by the constitution. If the relief sought in this case is a needed one it must be granted by the legislature, as this court has no power, by writ of error or otherwise, to review a judgment of the *nisi prius* court quashing an indictment.

Since this court has no jurisdiction the writ of error is dismissed.

*Writ dismissed.*