604

The People of the State of Illinois, Plaintiff-Appellee, *v.* Andrew Redmond, Defendant-Appellant.

(No. 57107;

First District (5th Division)—July 13, 1973.

James J. Doherty, Public Defender, of Chicago, (Ian Levin, Assistant Public Defender, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane, Ronald Neville, Russell Hartigan, and Doug Cannon, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

OFFENSES CHARGED

Aggravated battery. Ill. Rev. Stat. 1969, ch. 38, par. 12—4(b—1) (two counts).

Armed robbery. Ill. Rev. Stat. 1969, ch. 38, par. 18—2.

Indecent liberties with a child. Ill. Rev. Stat. 1969, ch. 38, par. 11—4 (a—2).

Deviate sexual assault. Ill. Rev. Stat. 1969, ch. 38, par. 11—3.

Attempt. Ill. Rev. Stat. 1969, ch. 38, par. 8—4.

JUDGMENT

At a bench trial, defendant was found guilty of one count of aggravated battery, armed robbery, indecent liberties, and deviate sexual assault. He was sentenced to concurrent terms of 4 to 8 years for aggravated battery, 10 to 15 years for armed robbery, 12 to 20 years for indecent liberties with a child, and 6 to 12 years for deviate sexual assault. Defendant was found not quilty of attempt and one count of aggravated battery.

CONTENTIONS RAISED ON APPEAL

1. The evidence presented by the State and defense raised a reasonable doubt of defendant's sanity, and the State failed to overcome the doubt by proof of sanity beyond a reasonable doubt.

2. Defendant was deprived of due process of law and a fair trial when the judge applied an erroneous legal standard to determine that defendant was proven sane beyond a reasonable doubt at the time the acts were committed.

3. It was error to convict and sentence defendant for three separate crimes arising from the same conduct and involving the same victim.

EVIDENCE

Douglas Westcott, for the State:

He was 12 years old at the time of the trial and at the time of the offense. He knew the difference between right and wrong, that difference being to tell the truth is right and to tell a lie is wrong.

At 11:45 A.M. on April 7, 1971, he and his friend, Paul Rumsfield, boarded a southbound elevated train in the downtown area on their way to the Museum of Science and Industry. About ten minutes after boarding the train, defendant, whom he identified in court, approached him and asked if he had any money. He said he had a little and defendant told him to give him some. The witness gave him a dollar and defendant then asked Paul if he had any money. Paul said no, so defendant came back to the witness and asked if he had any more. The witness said yes, but he needed it to get back home. Defendant then took out a knife and the witness gave him the last dollar he had. Defendant then, while standing in front of the witness, unzipped his pants and, with the knife at the back of the witness' neck, twice forced him to commit a deviate sexual act. At about that time, two police officers came into the moving car, took defendant by the shoulder, and pushed him down on the opposite seat. They took out guns and identified themselves as police before de-

fendant dropped the knife. The train was stopped, and defendant, the officers, the witness and his friend got off and went downstairs where defendant was handcuffed and put up against a fence, then taken to a police car and to the station. There were about 15 people in the car at the time of the incident.

Paul Rumsfield, for the State:

He was 13 years old at the time of the occurrence. He knew the difference between telling the truth and telling a lie. A lie was other than what was right, and the truth was what really happened. He corroborated the testimony of Douglas Westcott and identified defendant in court. At the time of the incident, defendant did not appear to be drunk or inebriated nor under the influence of drugs.

Police Officer Ernest Robinson, for the State:

He was with the special operations, mass transit unit. On April 7, 1971, at about noon, he and his partner were riding a southbound elevated train in the third car of a four-car train. At about 43rd Street, he looked into the last car and observed defendant standing in front of Douglas Westcott who was seated facing defendant. Defendant had his right hand behind Westcott's head and his left hand on his own penis. When he saw what was happening, he entered the fourth car behind defendant, caught him by the right shoulder, and spun him away from the victim. At that time he noticed the knife in his hand, and disarmed him after he disobeyed orders to drop the knife. Defendant was placed in custody, taken to the police station, and searched, but no money was found in his possession. The witness did not notice any odor of alcohol on defendant's breath, but defendant didn't act quite normal. He moved slowly, and if he said anything at all, it was erratic. After he was handcuffed, there was no struggle, he seemed cooperative and coherent, and seemed lucid and aware of what was going on around him.

Police Officer James Dvorak, for the State:

He was assigned to area 1, homicide-sex. On April 7, 1971, he met defendant while conducting an investigation of an occurrence at noon that day on an elevated train. After advising him of his rights, he asked defendant if he wished to state anything regarding the incident, and defendant replied, "I just lost my mind."

Andrew Redmond, defendant, on his own behalf:

On April 7, 1971, he was arrested by the police. On that day the spirits and the voices told him to play with little boys. He didn't remember which spirits and voices, they were just voices and spirits that he heard which told him to play with little boys. He had never heard from them before and couldn't remember if he obeyed their request. The first

thing he remembered after the spirits talked to him was being arrested. He could have been under the influence of "emphatamin."

Defendant was able to identify people in the courtroom and understood their role in the case. He knew and understood the nature of the charges against him.

OPINION

■■ Defendant argues that the evidence presented by the State and the defense raised a reasonable doubt of defendant's sanity at the time of the offense and that the State failed to prove defendant sane beyond a reasonable doubt. We agree.

Ill. Rev. Stat. 1969, ch. 38, par. 6—2(a) defines insanity as follows:

> "A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.
>
> (b) The terms 'mental disease or mental defect' do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct."

Insanity is an affirmative defense (Ill. Rev. Stat. 1969, ch. 38, par. 6—4), which "means that unless the State's evidence raises the issue involving the alleged defense, the defendant, to raise the issue, must present some evidence thereon." (Ill. Rev. Stat. 1969, ch. 38, par. 3—2(a).) From the facts of the case, it is clear that both the State and defense have presented "some evidence" which raises the issue of defendant's possible insanity at the time of the offense. Not only did Officer Robinson testify that defendant didn't act quite normal and used erratic speech patterns, but another State witness, Officer Dvorak, said that defendant told him he'd just "lost his mind" at the time of the incident. Defendant's testimony alone concerning voices and spirits would be sufficient in itself to raise "some evidence" of insanity.

■■ It is axiomatic that the law presumes all men to be sane. (*People v. Groves*, 100 Ill.App.2d 171, 241 N.E.2d 622). However, the presumption of sanity may be overcome and the affirmative defense of insanity raised if the evidence itself portrays serious mental defects or a substantial history of mental illness. *People v. Lono*, 11 Ill.App.3d 443, (N.E.2d). Once the defense has been raised, the presumption of sanity ceases and the State must prove beyond a reasonable doubt that at the time of the crime, defendant was legally sane. (Ill. Rev. Stat. 1969, ch. 38, par. 3—2 (b) and *People v. Gold*, 38 Ill.2d 510, 514, 232 N.E.2d 702, *cert. denied* 392 U.S. 940.) This, the State has failed to do. The record is totally devoid of any medical conclusions concerning defendant's mental state

at the time of the offense.[1] Although the arresting officer testified that defendant cooperated and appeared lucid after he was handcuffed, he also testified that defendant spoke erratically and didn't seem normal. Thirteen-year-old Paul Rumsfield said defendant didn't appear drunk or under the influence of drugs. Their testimony alone, however, is insufficient to show sanity beyond a reasonable doubt. Thus, in the absence of professional or lay opinions sufficient to rebut defendant's affirmative defense of insanity, the State failed to meet its burden of proving beyond a reasonable doubt that defendant was sane at the time of the offense.[2] See *People v. Taylor*, 1 Ill.App.3d 1053, 275 N.E.2d 717.

■■ Not only did the State fail to meet its burden of proof in this regard, but the judge erred when he based his decision on the standard for competency to stand trial rather than on the standard for sanity as a defense to the crime charged.

The record discloses that following defense counsel's closing argument, the trial judge made the following remarks:

"The Court: Mr. Redmond, step up.

The Court finds, as a matter of law, that the defendant, Andrew Redmond, is today and was on April 7, legally competent.

The Court will point out to both counsel here and place in the record that on motion of the Court, on July 7, 1971, this defendant was ordered examined by the Psychiatric Institute of the Circuit Court of Cook County, for the purpose of making a determination as to the mental competency of this defendant, and that in a report which has been filed and was filed on July 16, 1971, the Psychiatric Institute, Mr. Robert E. Reifman, the assistant director, reported to the court and in the response stated that his examination revealed that *the defendant was competent to stand trial and that he understands the nature and purpose of the proceedings and is able to assist in his own defense, which are the legal re-*

---

[1] There is, however, a strong letter of opinion by Dr. C. David Jones, Staff Psychiatrist for the Cook County Department of Corrections, read into the record by the judge during the hearing in aggravation and mitigation. Although the examination by the doctor was not ordered until after the trial and does not refer to defendant's mental condition at the time he committed the crime, it would serve as a basis for future investigations of defendant's psychological background.

[2] In reply to defendant's argument, the State ignores the affirmative defense and maintains that "defendant failed to raise a reasonable doubt as tc defendant's sanity to rebut the presumption that he was sane at the time of the robbery." We believe this assertion misconstrues the law. As we mentioned above, to raise an affirmative defense of insanity, it is only "some evidence" of defendant's insanity which must be presented to shift the burden of proof to the State to prove defendant's sanity beyond a reasonable doubt. Ill, Rev, Stat. 1969, ch. 38, par. 3—2(a).

*quirement [sic] which must be met in order for a defendant to stand trial in this State.* (Emphasis added.)

The Court feels that the People of the State of Illinois have proven their case beyond a reasonable doubt."

■■ There is nothing in the record to cast doubt on defendant's competency to stand trial. The standards therefor are set forth in the statute (Ill. Rev. Stat. 1969, ch. 38, par. 104—1) defining a person who is incompetent to stand trial as "a person charged with an offense who is unable because of a mental condition:

(a) To understand the nature and purpose of the proceedings against him; or

(b) To assist in his defense;  *  *  *"

(See also Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—1.) Further, there is no doubt that the Psychiatric Institute was reporting only on that phase of the case. But a hearing is not intended to be a determination of defendant's sanity at any time other than at the time defendant is being tested, nor does it relate in any substantial way to insanity as a defense to the crime charged.

■■ When a defendant raises the defense of insanity, an entirely different set of standards must be applied to determine if at the time of the act "as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." Ill. Rev. Stat. 1969, ch. 38, par. 6—2(a).

Thus, when the judge stated that defendant was "competent" on April 7, 1971, the day of the offense, and, in so stating, relied on the psychiatric report which determined only defendant's competence to stand trial in July, 1971, and not his capacity to appreciate the criminality of his conduct at the time of the crime, he was applying an erroneous standard which had no bearing on the defense raised.

Finally, defendant maintains that it was error to convict and sentence him for indecent liberties with a child, deviate sexual assault, and aggravated battery because all three arose out of the same conduct.

Defendant was charged under Ill. Rev. Stat. 1969, ch. 38, par. 11—4 (a—2) which states:

"(a) Any person of the age of 17 years and upwards who performs or submits to any of the following acts with a child under the age of 16 commits indecent liberties with a child:
*  *  *

(2) Any act of *deviate sexual conduct.*" (Emphasis added.)
He was also charged with deviate sexual assault. Ill. Rev. Stat. 1969, ch. 38, par. 11—3 provides:

"(a) Any person of the age of 14 years and upwards who, by force or threat of force, compels any other person to perform or submit to any act of *deviate sexual conduct,* commits deviate sexual assault." (Emphasis added.)

Since deviate sexual conduct is an element of both indecent liberties with a child and deviate sexual assault, in this case arising from the same course of conduct, and since, at the time of the offenses in question, the penalty for deviate sexual assault was the lesser of the two, we would consider it as having been merged into the indecent liberties charge for purposes of sentencing. See *People v. Baker,* 114 Ill.App.2d 450, 456, 252 N.E.2d 693.

■■ Furthermore, the use of force, which in this case constituted an element of aggravated battery, occurred when defendant placed the knife to the victim's neck. Since the knife was used both to force the commission of indecent liberties (which does not require but may be committed with force), and was at the same time the deadly weapon being used to commit the offense of aggravated battery, this element of defendant's criminal conduct was identical in both instances, and sentences for both would not stand. *People v. Lerch,* 52 Ill.2d 78, 284 N.E.2d 293; *People v. Brown,* 52 Ill.2d 94, 285 N.E.2d 1; *People v. Baker,* 114 Ill.App. 2d 450, 456, 252 N.E.2d 693.

In conclusion, therefore, all four convictions are reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

DRUCKER, P. J., and LORENZ, J., concur.