(No. 46128.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. ANDREW REDMOND, Appellee.

*Opinion filed September 27, 1974.*

SCHAEFER, J., dissenting.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel, Assistant Attorney General, and Patrick T. Driscoll, Jr., Barry Rand Elden, and Kenneth L. Gillis, Assistant State's Attorneys, and Timothy John Lee (Senior Law Student), of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Ronald P. Alwin, Assistant Public Defender, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County defendant, Andrew Redmond, was convicted of aggravated battery, deviate sexual assault, armed robbery and indecent liberties with a child. He was sentenced to the penitentiary for concurrent terms of 4 to 8 years, 6 to 12 years, 10 to 15 years and 12 to 20 years, respectively. The appellate court reversed and remanded, holding that sufficient evidence of insanity had been introduced at trial to require the State to prove defendant sane beyond a reasonable doubt and that the State had not satisfied this burden. (*People v. Redmond,* 13 Ill. App. 3d 604.) We granted the State's petition for leave to appeal, which challenges the evidentiary evaluation applied by the appellate court. Defendant has broadly attacked our jurisdiction to entertain the State's appeal under our present constitution (Ill. Const. (1970), art. VI, sec. 6) and Supreme Court Rules 604(a) and 315(a) (53 Ill.2d R. 604(a)(1), (2) and 315(a)), effective November 30, 1972. He also claims that an appeal to this court is prohibited by the double jeopardy clauses of the State (Ill. Const. (1970), art. I, sec. 10) and Federal (U.S. Const. amend. V) constitutions.

On April 7, 1971, about noontime, the 12-year-old victim and his companion boarded a southbound train in downtown Chicago to go to a local museum. Several minutes later the defendant approached and asked the victim for money, and the victim gave him one dollar. Defendant repeated his request to the victim's companion but he did not obtain any money. Thereupon he again asked the victim for money and produced a knife when the victim hesitated. After the victim gave defendant another dollar, defendant forced the victim to perform an act of fellatio. These events were corroborated by the victim's companion, who further testified that defendant did not appear to be drunk or under the influence of drugs.

Officer Ernest Robinson testified that he and his partner were assigned to the mass-transit detail. They were in the adjoining car of the train, and Robinson was able to see several of the events occurring between the victim and defendant. These policemen entered the car, disarmed the defendant and placed him under arrest. In response to the trial court's inquiry Robinson said that defendant did not seem "quite normal" because he moved slowly, but he later qualified his description and attributed this to defendant's muscular build. Robinson further said that defendant's speech was erratic but, after defendant had been placed in handcuffs, he was co-operative and seemed lucid and coherent.

Officer James Dvorak, who investigated the occurrence, saw defendant in police headquarters that day and he advised defendant of his *Miranda* rights. Defendant said that he understood, and in response to Dvorak's inquiry about the incident defendant stated, "I just lost my mind."

Defendant testified in his own behalf. When questioned as to any conversation he may have had on the day he was arrested, defendant said, "Well, the spirits and the voices told me to play with little boys." He explained that this was the only time he had heard these "voices" and that he could have been under the influence of drugs. Defendant further testified that after the "spirits" had spoken he did not recall anything until he was arrested.

During closing argument defense counsel maintained that defendant was not guilty because at the time of the occurrence defendant was insane or in a drugged or intoxicated condition. (Ill. Rev. Stat. 1971, ch. 38, pars. 6—2 and 6—3(b).) These affirmative defenses (par. 6—4) had not been previously disclosed to the State in response to its discovery motion which was filed about two weeks prior to trial. 50 Ill.2d R. 413(d), effective October 1, 1971.

First, defendant contends that the appellate court

decision in this case amounted to a judgment of acquittal because the State failed to introduce sufficient evidence of his sanity. He urges that section 6 of article VI of the 1970 Constitution thereby prohibits this court's consideration of the appeal. That section provides, in pertinent part:

> "Appeals from final judgments of a Circuit Court are a' matter of right to the Appellate Court *** except that after a trial on the merits in a criminal case, there shall be no appeal from a judgment of acquittal."

In support of this position he primarily relies upon *People v. Blanchett,* 33 Ill.2d 527, wherein the State successfully petitioned for leave to appeal from an appellate court decision which had reversed a conviction on the ground that the information did not charge an offense. It is maintained that in *Blanchett* the State's appeal was permitted because the appellate court decision was not, in effect, an acquittal. Thus, by implication defendant argues that *Blanchett* prohibits this appeal because the present case involves a judgment of acquittal.

The constitutional provision presently at issue is identical, insofar as pertinent to this appeal, with that set forth in *Blanchett.* However, we cannot ascribe the broad constitutional interpretation to that opinion as the defendant suggests. Our reading of *Blanchett* indicates that it was not decided upon constitutional grounds but rather upon the effect of the appellate court decision as applied to Rule 27 then governing appeals by the State. (Ill. Rev. Stat. 1965, ch. 110, par. 101.27(4).) We found that the actual basis of the appellate court decision was within the category set forth in that rule, thereby permitting a State appeal. Other decisions which defendant cites were also predicated upon the application of Rule 27. *People v. Kurtz,* 37 Ill.2d 103, 110 (value of stolen property); *People v. Ritchie,* 36 Ill.2d 392, 397-98 (multiple convictions); *People v. Petropoulos,* 34 Ill.2d 179, 181 (speedy trial).

Defendant's argument relating to section 6 of article

VI of the 1970 Constitution is without merit. The plain unequivocal language of that provision proscribes appeals in criminal cases from the circuit court where judgments of acquittal have been rendered. This section does not apply to appeals to this court from judgments of the appellate court which might be construed as acquitting a defendant in a criminal matter. *People v. Schwartz,* 58 Ill.2d 274.

Section 4(c) of article VI of the 1970 Constitution states that this court "may provide by rule for appeals from the Appellate Court" as in the instant case. Defendant further contends that Supreme Court Rules 604(a) and 315(a), as amended in 1972 (53 Ill.2d R. 604(a) and 315(a)), did not alter our prior Rule 604(a) (50 Ill.2d R. 604(a)), thereby precluding a State appeal in this matter. As relevant to this appeal the applicable rules provide:

Rule 604(a):

"(1) *When State May Appeal.* In criminal cases the State may appeal only from an order or judgment the substantive effect of which results in dismissing a charge for any of the grounds enumerated in section 114—1 of the Code of Criminal Procedure of 1963; arresting judgment because of a defective indictment, information or complaint; quashing an arrest or search warrant; or suppressing evidence.

(2) The State may petition for leave to appeal under Rule 315(a)." 53 Ill.2d R. 604(a).

Rule 315:

"(a) *Petition for Leave to Appeal; Grounds.* A petition for leave to appeal to the Supreme Court from the Appellate Court may be filed by any party, including the State, in any case not appealable from the Appellate Court as a matter of right. \*\*\*" 53 Ill.2d R. 315(a).

The underscored portions of these rules reflect the 1972 modifications.

Defendant would appear to argue that the provisions of Rule 604(a)(1) are controlling and that they impose a limited basis upon which the State may appeal. Rule 604(a)(1) is former Rule 27(4), which we construed in *People v. Blanchett,* 33 Ill.2d 527. S.H.A., ch. 110A, par.

604, Committee Comments, at 154 (1974 Pocket Supp.).

Historically the right of the State to appeal in a criminal matter was statutorily prohibited. (*People v. Barber,* 348 Ill. 40.) In 1933 the legislature adopted the requisite statute enabling the State to appeal "any order or judgment quashing or setting aside an indictment or information." (Smith-Hurd Rev. Stat. 1933, ch. 38, par. 747.) The State's right to appeal was subsequently broadened to include the quashing of an arrest warrant or search warrant and the suppression of evidence. (Ill. Rev. Stat. 1961, ch. 38, par. 747.) After adoption of the Judicial Article (Ill. Const. (1870), art. VI, effective January 1, 1964 (Ill. Rev. Stat. 1963)), Rule 27(4) was adopted (Ill. Rev. Stat. 1965, ch. 110, par. 101.27(4)) and, as previously noted, is presently incorporated within Rule 604(a)(1). It is easily recognized that the right of the State to appeal from an adverse judgment of a lower court has been expanded by statute or more recently by Supreme Court Rule.

The 1972 amendments to Rules 604(a)(2) and 315(a) require an interpretation conformable with the broadening of the State's right to appeal in this instance, and we reject defendant's contrary suggestion that we lack jurisdiction to decide this case. To merely say that no substantive change was intended by these rule modifications would be to adopt the position that the amendments were superfluous and are of no meaning. This construction cannot generally be presumed. (*Cf. Winnebago County v. Industrial Com.,* 34 Ill.2d 332, 335; *Scribner v. Sachs,* 18 Ill.2d 400, 411.) Moreover since the effective date of the amended rules, our present holding has been applied in cases involving State appeals which we allowed to be taken on issues not related to those specified in Rule 604(a)(1). *People v. Scott,* 57 Ill.2d 353 (reduction of sentence under Unified Code of Corrections); *People v. Moore,* 55 Ill.2d 570 (improper argument by the prosecution); *People v. Cole,* 54 Ill.2d 401 (juror bias).

The resolution of defendant's jurisdictional contention need not be limited to construction of these rules governing the right of the State to appeal to this court from adverse decisions of the appellate court. In *People v. Perry,* 52 Ill.2d 156, which was decided several months prior to our adoption of the 1972 amendments in question, the majority of this court reversed a judgment of the appellate court which ordered a new trial due solely to improper jury instructions. The dissenting opinion in *Perry* suggested that the issue raised by the State was not within the ambit of Rule 604(a)(1). However, the disposition of the appeal in *Perry* was consonant with this court's supervisory jurisdiction over the administration of criminal justice. *People ex rel. Ward v. Moran,* 54 Ill.2d 552, 557; *People v. Warr,* 54 Ill.2d 487, 493; *People v. Prim,* 53 Ill.2d 62, 76, *cert. denied,* 412 U.S. 918.

Defendant additionally argues that this appeal is precluded by the State constitutional prohibition against double jeopardy. (Ill. Const. (1970), art. I, sec. 10.) He relies exclusively on *People v. Royal,* 1 Scam. (2 Ill.) 557, which concerned an application of the constitutional constraint against double jeopardy under a constitutional provision (Ill. Const. (1818), art. VIII, sec. 11), which defendant maintains is substantively identical to the one at issue.

We need not consider the validity of the *Royal* case under the present constitutional safeguards against double jeopardy which, under varying circumstances, bar a retrial for the same offense. (See generally *People v. Allen,* 368 Ill. 368, 378-79, *appeal dismissed,* 308 U.S. 511.) Section 10 of article I of the 1970 Constitution is, with minor rephrasing, an adoption of its predecessor provision (Helman and Whalen, Constitutional Commentary, S.H.A. Const. of 1970, art. I, sec. 10, p. 492), which has been construed as almost identical to Federal double jeopardy protection (*People v. Hairston,* 46 Ill.2d 348, 357, *cert. denied,* 402 U.S. 972). Whether viewed in the context of

the Federal or State sanctions against double jeopardy, we hold that a defendant, who has brought an appeal to an intermediate appellate court and who obtains favorable relief from that tribunal, may not invoke a claim of double jeopardy when the State seeks further direct appeal of the matter. See *North Carolina v. Pearce,* 395 U.S. 711, 717, 23 L. Ed. 2d 656, 664-65, 89 S. Ct. 2072; *Green v. United States,* 355 U.S. 184, 189, 2 L. Ed. 2d 199, 205, 78 S. Ct. 221; *United States v. Jorn,* 400 U.S. 470, 484, 27 L. Ed. 2d 543, 556, 91 S. Ct. 547 (plurality opinion); *People v. Benson,* 24 Ill.2d 159, 162-63, *cert. denied,* 371 U.S. 816.

We now take up the question whether the appellate court properly held that there was sufficient evidence presented as to the issue of insanity. Insanity is an affirmative defense (Ill. Rev. Stat. 1971, ch. 38, par. 6—4) and is defined in section 6—2 of the Criminal Code as follows:

"(a) A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

(b) The terms 'mental disease or mental defect' do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct." Ill. Rev. Stat. 1971, ch. 38, par. 6—2.

Section 3—2(a) of the Criminal Code provides:

"[U]nless the State's evidence raises the issue involving the alleged [affirmative] defense, the defendant *** must present some evidence thereon." Ill. Rev. Stat. 1971, ch. 38, par. 3—2(a).

The appellate court concluded that the testimony of officers Robinson and Dvorak as well as that of defendant presented "some evidence" of insanity thereby requiring the State to prove defendant's sanity beyond a reasonable doubt. (Ill. Rev. Stat. 1971, ch. 38, par. 3—2(b).) In so holding that court specifically rejected the contention that

defendant must raise a reasonable doubt of sanity before the State is required to prove that defendant was sane. 13 Ill. App. 3d 604, 609 n.2.

Defendant maintains that the question as to the quantum of proof necessary to raise the affirmative defense of insanity is easily ascertainable from the clear and unambiguous statutory language which merely requires that "some evidence" of insanity be introduced thereby placing the burden upon the State to rebut the defense by proof beyond a reasonable doubt. This position is in contradistinction to our recent decision in *People v. Smothers,* 55 Ill.2d 172.

In *Smothers,* the defendant, who was a hospital patient, killed a visitor in a hospital lounge and then set fire to the area. Medical evidence indicated that he was agitated and suffered from an anxiety neurosis, although psychiatric testimony tended to negate the defense of insanity. At page 174 we said, "This court has held that all men are presumed to be sane and that, in order to present the issue of the accused's insanity, the evidence must raise a reasonable doubt of his sanity at the time of the commission of the offense." See also *People v. Gold,* 38 Ill.2d 510, 514, *cert. denied,* 392 U.S. 940; *People v. Skeoch,* 408 Ill. 276, 280.

Defendant's argument pertaining to the amount of proof necessary to establish the possibility of an affirmative defense is further refuted by the commentary to section 3—2 (par. 3—2) of the Criminal Code, which may be useful in ascertaining legislative intent. (*People v. Wallace,* 57 Ill.2d 285, 290.) This commentary states:

"Section 3—2 states the minimum requirement: unless the prosecution's evidence raises the issue involving an alleged defense, the defendant, to raise the issue, must present some evidence thereon. *The Committee did not care to state how much evidence should be required. It is obvious, however, that unless such evidence is sufficient to warrant submitting the issue to the jury, and to raise a reasonable doubt as to his guilt of the offense charged,* it

will not be of substantial benefit to him." (S.H.A. (1972), ch. 38, par. 3—2, Committee Comments, at 192-93.) (Emphasis added.)

This explanatory material supports the conclusion that the evidence must raise a reasonable doubt as to an accused's sanity and does not refer to a lesser standard as urged by defendant.

It has also been recognized that a construction of a statute by this court may ordinarily be presumed to have reflected the correct legislative intent unless the legislature seeks to amend the statute. (*Bell v. South Cook County Mosquito Abatement District,* 3 Ill.2d 353, 356.) Since the enactment of the Criminal Code in 1961, it has been held that a reasonable doubt of a defendant's sanity must be presented to rebut the presumption and require the State to introduce evidence to prove an accused sane, and the legislature has not effected a modification of this construction. We therefore must reject defendant's contention relating to his evidentiary burden in establishing an affirmative defense of insanity.

Defendant argues that sufficient evidence of a mental disease or defect was presented to rebut the presumption of sanity. Specifically, defendant relies upon the testimony of Officer Robinson that defendant did not act "normal" at the time of his arrest and the testimony of Officer Dvorak, who said defendant stated to him that he "lost his mind." When this testimony is considered with defendant's recollection that he was told by the "spirits and voices *** to play with little boys," defendant asserts that the issue of his sanity was properly raised thereby requiring the State to prove him sane beyond a reasonable doubt.

Officer Robinson amplified his testimony that defendant did not act "normal" by attributing defendant's unusual physical movements to his muscular build. While defendant's speech pattern initially seemed erratic at the time of the arrest, Robinson said defendant was coherent and lucid shortly thereafter. Defendant's statement that he

"lost his mind," which he made to Officer Dvorak, may merely have been a phrase of common usage. We do not believe that this testimony is sufficient to rebut the presumption of sanity.

Nor can we say that defendant's testimony concerning the "spirits and voices" was adequate. It should be noted that the record contains one report filed before trial commenced which indicated that defendant was competent to stand trial. A similar report was filed at the hearing on aggravation and mitigation. There was also an additional psychiatric report filed at this hearing which fails to establish that defendant was suffering at that time from a "mental disease or defect" as defined in the Criminal Code.

It is of further interest to note that nearly two weeks prior to trial defense counsel failed to allege an insanity defense in response to the State's written discovery motion. The failure to do so is plausible in view of the record which contains two psychiatric reports compiled shortly after defendant's arrest but not introduced at trial. Neither report would sustain a conclusion that defendant was insane. Rather, both reports would seem to impute defendant's behavior to his use of drugs and alcohol after his recent release from the penitentiary.

As in *People v. Smothers,* defendant's conduct might be considered bizarre and irrational. Similarly, there is no evidence of any prior mental treatment or irrational conduct, and under the circumstances the validity of defendant's characterization as to his motivation to commit the offenses is subject to doubt. After consideration of the record, we conclude that a reasonable doubt as to defendant's sanity at the time he committed the criminal acts was not established.

During oral argument of this cause the State has conceded that several of the sentences imposed were improper for they arose from the same course of conduct. (Ill. Rev. Stat. 1971, ch. 38, par. 1—7(m).) It has been

correctly suggested that the offenses of aggravated battery and armed robbery are sufficiently related so as to negate multiple convictions thereon. (*People v. Lilly*, 56 Ill.2d 493, 495; see *People v. Stewart*, 45 Ill.2d 310, 313.) The same reasoning applies to the convictions for deviate sexual assault and indecent liberties with a child, the latter being the more serious offense under prior law.

Accordingly, the judgment of the appellate court is reversed. The judgments of the circuit court of Cook County pertaining to defendant's conviction for armed robbery and indecent liberties with a child are affirmed. The cause is remanded to the circuit court with directions to vacate its judgments of conviction for aggravated battery and deviate sexual assault.

*Appellate court reversed,*
*circuit court affirmed in part,*
*and cause remanded with directions.*

MR. JUSTICE SCHAEFER, dissenting:

I think that the appellate court correctly determined that the evidence failed to establish beyond a reasonable doubt that the defendant was sane at the time of the offense, and so I dissent from that portion of the majority opinion which reverses that determination. In all jurisdictions, unless the State's evidence raises the issue of the defendant's sanity, the defendant has the burden of introducing evidence which does so. Some jurisdictions require that a defendant introduce sufficient evidence to raise a reasonable doubt before the issue goes to the jury. (See, *e.g.*, *Robinson v. State* (1968), 249 Md. 200, 238 A.2d 875, *cert. denied*, 393 U.S. 928, 21 L. Ed. 2d 265, 89 S. Ct. 259; *Sallavirta v. State* (Fla. App. 1968), 210 So. 2d 487; *West v. State* (Okla. Crim. 1967), 433 P.2d 850.) Other jurisdictions require only that there be "some evidence" in order to raise the issue. (See, *e.g.*, *Gordon v. United States* (5th Cir. 1971), 438 F.2d 858, 885; *United*

*States v. Currier* (2d Cir. 1969), 405 F.2d 1039; *State v. Newson* (1969), 183 Neb. 750, 164 N.W.2d 211.) The reasonable doubt test and the some evidence test are separate and distinct tests which place different burdens upon a defendant. Annot., *Modern Status of Rules as to Burden and Sufficiency of Proof of Mental Irresponsibility in Criminal Case* (1968), 17 A.L.R.3d 146; W. LaFave & A. Scott, Handbook on Criminal Law 48 (1972).

In Illinois, the common law rule was that a defendant had to introduce evidence that raised a reasonable doubt. (*People v. Robinson* (1961), 22 Ill. 2d 162; *People v. Skeoch* (1951), 408 Ill. 276; *People v. Patlak* (1936), 363 Ill. 40.) The common law, however, was replaced by section 3—2 of the Criminal Code of 1961, which is as follows:

> "(a) 'Affirmative defense' means that unless the State's evidence raises the issue involving the alleged defense, the defendant, to raise the issue, must present some evidence thereon.
>
> (b) If the issue involved in an affirmative defense is raised then the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense."
> Ill. Rev. Stat. 1973, ch. 38, par. 3—2.

The statute expressly provides that the defendant must introduce only "some evidence." The "some evidence" test was well established and recognized at the time this statute was enacted (*Flowers v. State* (1956), 236 Ind. 151, 139 N.E.2d 185; Annot., 17 A.L.R.3d 146, 172 (1968)), and the language used in the statute clearly evidences acceptance of this test.

The majority relies on *People v. Smothers* (1973), 55 Ill.2d 172, to support the conclusion that the defendant must introduce evidence which raises a reasonable doubt of his sanity. *Smothers* did indeed apply the reasonable-doubt test. The primary concern of the court in that case, however, was with the contentions advanced by the prosecution which were:

"A. Evidence of irrational behavior, standing alone will not support the defense of insanity.

B. The defense of insanity is not raised until it is placed in issue by the introduction of opinion testimony offering affirmative evidence of legal insanity as defined by statute."

In mentioning the reasonable doubt test, the court relied solely upon this court's decisions under the common law, and the opinion was not concerned with the effect of the statute's use of the term "some evidence."

The majority opinion also relies upon the Committee Comments to section 3—2 of the Criminal Code. I find this reliance unconvincing, since the legislature used the term "some evidence," which then and now has a meaning that is clearly distinct from reasonable doubt. Moreover, the commentary is patently inaccurate. It begins: "The Committee did not care to state how much evidence should be required." Yet the Committee did state how much evidence was required—some evidence. If the Committee had not cared to state a standard, it could have taken the approach adopted by the Model Penal Code (sec. 1.13, Comment (Ten. Draft No. 4, 1955)), and used the word "evidence" standing by itself. The Committee Comments to section 3—2 continue: "It is obvious, however, that unless such evidence is sufficient to warrant submitting the issue to the jury, and to raise a reasonable doubt as to his guilt of the offense charged, it will not be of substantial benefit to him." (Ill. Ann. Stat., ch. 38, sec. 3—2, at 193 (Smith-Hurd 1972).) This is not at all obvious to me. A requirement that a defendant produce only some evidence of insanity in order to place upon the prosecution the burden of proving him sane beyond a reasonable doubt is not the same as a requirement that he produce enough evidence to raise a reasonable doubt in order to achieve the same result. The two requirements involve the difference between some evidence, and enough evidence to require, if unrebutted, a directed verdict in the defendant's favor.

That is a significant difference to a defendant and also to a trial judge who must determine whether to instruct the jury that before the defendant can be convicted the prosecution must prove beyond a reasonable doubt that he was sane at the time of the commission of the offense.