THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DONALD GILLEY, Defendant-Appellant.

Second District (2nd Division)   No. 75-442

Opinion filed August 9, 1976.

Ralph Ruebner and J. Daniel Stewart, both of State Appellate Defender's Office, of Elgin, for appellant.

William J. Cowlin, State's Attorney, of Woodstock (Phyllis J. Perko, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant was charged with the crime of burglary and was convicted by a jury. He was sentenced to not less than one nor more than three years in the penitentiary. He appeals his conviction on the ground that the court erred in refusing to give the defendant's requested instruction on sanity since the evidence raised a reasonable doubt as to the defendant's sanity at the time of the offense.

The defendant was apprehended at the scene of the burglary. The testimony indicated that a neighbor had observed two youths apparently attempting to break into a house and called the police. The defendant was found by the police hiding in a closet of the house. He told the police that he had been en route to his cousin's house to baby-sit for her children when he observed two youths in the act of breaking into a house; that he entered the house through a window in order to apprehend them; that they fled and he then heard the police coming, got frightened and hid in the closet, where the police found him.

The defense did not actually raise the issue of the defendant's sanity prior to trial, although the State was furnished with the name of a psychiatrist who might be called by the defense. In his opening statement the defense counsel merely alluded to the strangeness of the defendant's behavior in hiding in a closet if he was in fact innocent and said he would try to show the jury that the defendant "is not a normal person," but that "Donald Gilley is the type of person whose actions would be the type that would allow him or would cause him to do something like be in the house and hide in the closet." No mention was made of insanity in the opening statement.

At the trial the defense called Dr. Pavkovic, a psychiatrist. He testified that he had examined the defendant briefly about 14 months before the burglary and at that time the defendant was, in his opinion, suffering from schizophrenia, simple type. Over objection, defense counsel was allowed to ask Dr. Pavkovic if, at the time of his examination, the defendant's mental state was such as to be consistent with hiding in a closet even though he was innocent of any wrongdoing. Dr. Pavkovic's answer was in the affirmative. On cross-examination, however, Dr. Pavkovic testified

that at the time of his examination the defendant could "differentiate what is right and what is wrong" and that the defendant had the capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of law.

The defense also called the defendant's parents, who testified that the defendant was moody, often secretive and irrational, and that he had been rather peculiar since he was struck on the head some two years before in a fight with some other youth. They expressed the opinion that the defendant was "not completely sane." There was also evidence by the parents that the defendant had taken an overdose of sleeping pills and that he had shot himself in the hand, although there was no testimony to indicate whether or not this was a suicide attempt.

Dr. Martinez, a psychiatrist called by the State, testified he found the defendant sane, that defendant knew right from wrong and that defendant was competent to stand trial at the time he examined him, which was several weeks after the crime in question.

At the conference on instructions the defendant offered the standard Illinois Pattern Jury Instruction Criminal No. 24.01 reading as follows:

> "A person is insane and not criminally responsible for his conduct if at the time of the conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law."

The trial court refused to give the requested instruction. It is the contention of the defendant that it was error to refuse the instruction because the defense had adduced *some* evidence of insanity and the burden was then on the State to prove the defendant sane beyond a reasonable doubt, which created an issue for the jury and required that the instruction be given.

■■ The trial judge's refusal to give the insanity instruction was apparently based on his interpretation of the case of *People v. Redmond,* 59 Ill. 2d 328, which dealt with the question of the burden of proof where the issue of insanity is raised. In that case the defendant was charged with deviate sexual assault, armed robbery, aggravated battery and indecent liberties. At the trial there was some evidence of insanity, being (a) the testimony of the police officer who arrested the defendant at the scene of the crime that his speech and reactions appeared abnormal and (b) after having been given his *Miranda* warnings, when asked if he had anything he wanted to say, the defendant replied, "I just lost my mind," and (c) that at the trial the defendant testified that "the spirits and the voices" had told him to play with little boys. The defense raised the issue of insanity and the State put on a psychiatrist who, however, only testified that the defendant was sane for the purpose of standing trial at the time he

examined him. There was no medical determination of defendant's sanity at the time of the offense. The defense contended it had raised the issue of the defendant's sanity sufficiently to put the burden on the State to prove the defendant sane beyond a reasonable doubt. The appellate court (13 Ill. App. 3d 604) agreed and reversed the defendant's conviction citing section 3—2 of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 3—2):

"(a) 'Affirmative defense' means that unless the State's evidence raises the issue involving the alleged defense, the defendant, to raise the issue, must present some evidence thereon.

"(b) If the issue involved in an affirmative defense is raised then the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense."

The State appealed to the supreme court and the supreme court reversed the appellate court and held, in effect, that "the evidence [of the defendant] must raise a reasonable doubt of his sanity at the time of the commission of the offense" (citing *People v. Smothers*, 55 Ill. 2d 172, 174). While there are some differences between the *Redmond* case and the present case in that here we have a history of possible previous mental disorder and irrational conduct from the testimony of Dr. Pavkovic and the defendant's parents, the supreme court's interpretation of section 3—2 in the *Redmond* case is binding on us here, and we hold that the defendant did not raise the defense of insanity by evidence sufficient to put the burden of the issue on the State.

■■ Even disregarding the *Redmond* case, however, we would be constrained to so hold in this case. To begin with, the testimony of Dr. Pavkovic was not presented for the purpose of raising an issue as to the defendant's sanity. As stated by defense counsel the psychiatrist was not called to testify as to the defendant's sanity or insanity at the time of the crime but rather to refute the implication of guilt due to his hiding in a closet of the burglarized house, by the psychiatrist's opinion that if the defendant was in the same mental state at the time he committed the burglary as he was some 14 months earlier when he was examined, then he was capable of such conduct even though innocent. Such testimony clearly did not go to the issue of the defendant's sanity at the time of the burglary. It was presented for the purpose of refuting an inference of guilt and could not be, and admittedly was not intended to be, evidence of the defendant's insanity when the burglary occurred. Thus, the issue of the defendant's sanity was not raised by that testimony.

■■ Nor can we consider the testimony of the parents as evidence of insanity. There was evidence of some irrational behavior, but considering the tendency of parents to rationalize the behavior of their children as an innocent derangement rather than a criminal act, their conclusion that the

defendant was not quite sane is not very compelling evidence on this issue.

■■ There was, therefore, a modicum of evidence as to the defendant's insanity at the time of the burglary. On the other hand, the State's psychiatrist, Dr. Martinez, who examined the defendant some few weeks after the crime, expressed the clear and unequivocal opinion that there was no evidence that the defendant was insane around the time of the burglary, that he knew right from wrong and he could appreciate the consequences of his acts. We are inclined to believe that on balance the State's evidence overcame the defendant's suggestion of insanity beyond a reasonable doubt in any case. It must be borne in mind in this connection that the purpose of the defense testimony as to the defendant's history was to refute an inference rather than to establish the affirmative defense of insanity. Defense counsel stated:

> "First of all, the issue is not to determine the defendant's insanity, the issue is to show that Donald Gilley could hide in a closet being the type of person he is, not a normal person, and that his intention and reason for hiding are not the implication of guilt, but are consistent with his innocence."

Moreover, his own witness, Dr. Pavkovic, expressed the opinion that the defendant had the capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of law.

Since the instruction requested by the defendant requires that the defendant "lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law" and since both the State's and the defendant's experts agreed that the defendant's mental state did not reach that condition, it is clear that the trial judge was correct in refusing the requested instruction. The requirements for raising the issue of insanity were not met by the testimony of the defendant's parents, which in any event was overcome beyond a reasonable doubt by the combined testimony of the experts on the precise issue of insanity as defined in the instruction.

We see no error in the trial court's refusal to give the insanity instruction under the circumstances.

The judgment of the circuit court of McHenry County is affirmed.

Judgment affirmed.

T. J. MORAN, P. J., and DIXON, J., concur.