THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HERSCHEL GLENN, Defendant-Appellant.

Second District   No. 83—0651

Opinion filed October 21, 1985.

Julius L. Sherwin, of Sherwin & Sherwin, of Chicago, and G. Joseph Weller, Paul J. Glaser, and Nicholas J. Kritikos, all of State Appellate Defenders' Office, of Elgin, for appellant.

Robert J. Morrow, State's Attorney, of Geneva (Phyllis J. Perko and Andrea Becker, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Herschel Glenn, Jr., was charged with murdering James Wright and with raping and murdering Lillian Final in an in-

dictment returned by a Kane County grand jury. The charges relating to Final were dismissed because Cook, rather than Kane, County was the proper venue to try those charges. (Ill. Rev. Stat. 1981, ch. 38, par. 1—6(a).) Following a jury trial, defendant was found guilty of murder and sentenced to a seventy year term of imprisonment. Defendant appeals contending that the prosecutor's elicitation of certain testimony improperly infringed on defendant's rights to remain silent and to counsel; that the trial court erroneously refused to instruct the jury on the defense of insanity; and that statements by the trial court and the prosecutor regarding the relevance of defendant's state of mind at the time of the offense denied defendant a fair trial. We affirm.

It is only necessary to recite the most significant of the great body of evidence admitted at trial prior to discussing the issues raised. Wright and Final were together the evening of May 7, and the early morning of May 8, 1982. About 2:40 a.m. an Elgin police officer saw Wright's empty vehicle with its interior lights on in Lord's Park. An examination about a half hour later revealed that the keys were in the ignition and both Wright's wallet and Final's purse were inside the vehicle.

At about 3:45 a.m. Charles Freemon and Scott Burns saw defendant standing over a body on Massey Road near Route 25. They also read the license plate number on the automobile defendant subsequently drove away in, and it was later determined that the number was for an automobile registered in defendant's name.

The body was James Wright's. He had been shot seven times, including three times in the head. Ballistics tests showed that the projectiles recovered from Wright's body had been fired from a five-shot .38-caliber revolver which was seized during a search of defendant's apartment. Thirteen feet from Wright's body the police found a wallet containing an identification card of defendant and defendant's Elgin police department badge.

At 9:30 a.m. police were informed that Lillian Final's nude body had been discovered at the Stewart-Warner building near Elgin. She had been shot five times and projectiles found near the building as well as those recovered from her body had all been fired from the same .38-caliber revolver used to kill Wright. Tests conducted on a swab taken of Final's vagina indicated the presence of semen which could have come from defendant but could not have come from Wright. Pubic hairs found in defendant's undershorts and his automobile were consistent with Final's but not with Wright's or defendant's. Blood on defendant's jeans and sportcoat could have come from

Wright but not from Final or defendant.

We choose to discuss the issues in a different order from that used by the parties. Whether the jury should have been instructed on insanity will be discussed first; whether statements by the trial court and prosecutor on the relevance of defendant's state of mind denied defendant a fair trial will be discussed second; and whether the prosecutor's elicitation of certain testimony improperly infringed on defendant's rights to remain silent and to counsel will be discussed last.

Defendant contends the jury should have been instructed on the defense of insanity.

> "The well-established rule in Illinois is that once a defendant introduces evidence which, if believed, would create a reasonable doubt as to whether, at the time of the alleged crime, 'as a result of a mental disease or mental defect,' the defendant possessed 'substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law' (Ill. Rev. Stat. 1971, ch. 38, par. 6—2), the burden shifts to the State to prove beyond a reasonable doubt that the defendant possessed the requisite mental capacity at the time of the alleged crime. (*People v. Redmond* (1974), 59 Ill. 2d 328, 336-38.)" (*People v. Foster* (1979), 76 Ill. 2d 365, 378-79, 392 N.E.2d 6, 12.)

Defendant's position is that the evidence at trial, particularly the testimony of his parents and of Dr. Orest Mryszuk, raised a reasonable doubt as to his sanity at the time of the offense. We disagree.

The gist of defendant's parents' testimony was that, after defendant's February 1982 hospitalization for carbon monoxide poisoning, he was changed in some respects. According to his mother, he seemed anxious and irritable and did not communicate with her as often as he had previously. His father testified defendant did not visit him as often as before.

Dr. Mryszuk was an internist who treated defendant for carbon monoxide poisoning in February and early March 1982. Less than a month after the offense, Dr. Mryszuk responded to a letter about defendant from Elgin Police Captain Harold Phortmiller. Dr. Mryszuk wrote, *inter alia*:

> "After consultation with a psychiatrist, our conclusions are the following:
>
>> 1. The possibility exists of a pre-existing organic brain syndrome, which could have progressed, secondary to the toxic effect of the carbon monoxide poisoning; and possible subse-

quential alcoholic abuse and/or intoxication might have triggered an acute psychotic reaction.

2. The possibility exists that the carbon monoxide poisoning, could have caused an organic brain syndrome, which manifests itself in an acute psychotic reaction following the ingestion of alcohol.

* * *

After discussing the possibility of the above syndrome, with the psychiatrist, it was felt that any confirmation of any of the neurological phenomenon mentioned, would have to be confirmed by psychological testing as well as neurological testing, electroencephalagram, C-T scan, and etc."

Dr. Mryszuk testified that he did not perform tests to determine whether defendant had organic brain syndrome so he did not know whether the condition was present. He also testified he was not qualified to give an opinion as to whether defendant suffered from a mental disease or defect.

Dr. Frank P. Johnson was a psychiatrist appointed by the court to examine defendant. A court appointed clinical psychologist, Dr. Harry E. Gunn, conducted a psychological evaluation (which included several psychological tests) used by Dr. Johnson. Drs. Johnson and Gunn, testifying for the State, both stated there was no evidence of organic brain damage. Neither was of the opinion defendant suffered from any mental disease or defect.

■ The evidence simply did not raise a reasonable doubt as to defendant's sanity. Although not of itself dispositive, it is noteworthy that no witness testified to an opinion that defendant was insane. (See *People v. Smothers* (1973), 55 Ill. 2d 172, 175, 302 N.E.2d 324, 326.) The testimony of defendant's parents that he changed after the carbon monoxide poisoning—that he was anxious, irritable, communicated less with his mother, and visited his father less often—was simply no evidence that he suffered from a mental disease or defect, let alone that he lacked substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. (Ill. Rev. Stat. 1981, ch. 38, par. 6—2(a); see *People v. Dunigan* (1981), 96 Ill. App. 3d 799, 823-24, 421 N.E.2d 1319, 1337 (evidence of bizarre behavior, including antisocial conduct on a day other than day of crime, was insufficient to raise a reasonable doubt of sanity).) In addition, both the contents of Dr. Mryszuk's letter and his testimony at trial make it clear that he mentioned organic brain syndrome merely as a possibility to be tested for, not as a condition he believed to be present. This possibility without more, particularly in view of

the testimony of Drs. Johnson and Gunn that appropriate testing revealed no evidence of organic brain damage, did not raise a reasonable doubt of his sanity. Finally, although defendant's characterization of the actions the evidence showed as brutal, senseless, bizarre, and out-of-character certainly seem apt, such actions are not sufficient to raise a reasonable doubt of his sanity. (*People v. Dunigan* (1981), 96 Ill. App. 3d 799, 822, 421 N.E.2d 1319, 1336.) We accordingly conclude that the trial court properly refused to instruct the jury on the defense of insanity because the evidence viewed as a whole leaves no reasonable doubt as to defendant's sanity. *People v. Redmond* (1974), 59 Ill. 2d 328, 320 N.E.2d 321; *People v. Gilley* (1976), 40 Ill. App. 3d 824, 353 N.E.2d 88.

Defendant has also raised an issue concerning the propriety of certain remarks made by the prosecutor and judge during defense counsel's closing argument. The portion of the transcript on which this issue is based reads:

"MR. SHERWIN [defense counsel]: *** I have no means of inquiring into how they arrive at their conclusions other than you heard me cross-examine the witnesses. There were certain tests—

MR. MORROW [State's Attorney]: Your Honor, I'm going to object. Again, their conclusions are not an issue in this case any more.

THE COURT: Yes. If you are questioning their conclusions, Mr. Sherwin, that's correct. The mental state of the defendant is not an issue in this case at the time of the shooting.

MR. SHERWIN: Without talking about conclusions, there were certain tests that could have been made that weren't made. That was elicited from Dr. Johnson where certain recent discovery—

MR. MORROW: I also object to this, Your Honor. It goes to the mental state of the defendant which is no longer an issue in this case.

THE COURT: Yes, I would concur. Objection is sustained."

Defendant maintains the statements that his mental state at the time of the offense was not an issue misstated the law because, although insanity had been removed from the jury's consideration by prior ruling of the court, the State was nonetheless required to prove beyond a reasonable doubt that defendant knew his shooting of James Wright would cause Wright's death.

Preliminarily, we note that defendant's statement of the mental element required to be proved would be an overstatement had the

jury been properly instructed. Under the indictment, defendant could have been found guilty if it was proved that he intended to kill Wright or he knew shooting Wright would cause Wright's death or he knew shooting Wright created a strong probability of death or great bodily harm to Wright. (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1(a)(1), (2).) The jury instructions on the point were, to defendant's benefit, ineptly framed. The issues instruction required the State to prove defendant knew shooting Wright would cause death or great bodily harm to Wright. Inexplicably, the instruction defining murder did so solely in terms of knowledge that the acts performed would cause death. Given this muddled state of the instructions, we will discuss the issue raised on the basis that it was necessary for the State to prove defendant's knowledge that his acts would cause James Wright's death.

■ The issue raised has been waived by defendant's failure to make a timely objection on the ground asserted and failure to raise the contention in his post-trial motion. (*People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856, 857; *People v. Conrad* (1967), 81 Ill. App. 2d 34, 49-50, 225 N.E.2d 713, 721, *aff'd* (1968), 41 Ill. 2d 13, 241 N.E.2d 423.) Defendant requests that we review the issue raised as plain error. (87 Ill. 2d R. 615(a).) This would be appropriate if the evidence was closely balanced or if the error was of such a magnitude it deprived defendant of a fair and impartial trial. (*People v. Szabo* (1983), 94 Ill. 2d 327, 354-55, 447 N.E.2d 193, 206.) Neither of these conditions is present in the case at bar.

The evidence of guilt in this case was overwhelming. The ballistics test results showing Wright was killed by bullets from defendant's revolver; the finding of defendant's badge and identification near Wright's body; the identification of defendant as the person standing over the body by two eyewitnesses; and the observation by the two eyewitnesses of a license plate for a vehicle registered in defendant's name leave no doubt that defendant killed Wright. With insanity properly ruled out of the case, the evidence of defendant's mental state at the time of the killing was also overwhelming. Defendant, a police officer familiar with guns, certainly must have been consciously aware that shooting Wright seven times, including three times in the head, was practically certain to cause Wright's death. (Ill. Rev. Stat. 1981, ch. 38, pars. 4—5(b), 9—1(a).) The evidence in the case at bar was thus not closely balanced, a fact which distinguishes it from *People v. Eckhardt* (1984), 124 Ill. App. 3d 1041, 465 N.E.2d 107, upon which defendant's plain error argument principally rests.

Neither was the error, if error there was, of such magnitude that it denied defendant a fair and impartial trial. The remarks at issue

were made when defense counsel was discussing the testimony of Drs. Johnson and Gunn. Those two witnesses were relevant solely to the question of defendant's sanity, a question the court had previously ruled was not raised by the evidence. The remarks of the prosecutor and judge were in response to defense counsel's improper argument on the subject of sanity. In context, the jury could only have understood the remarks to have been statements that sanity was no longer an issue. This understanding was bolstered by instructions which, although far from perfect, did inform the jury that the State was required to prove the "knowing" mental element. Finally, defense counsel apparently understood the remarks in this way since, while he did not raise the issue asserted on appeal, he did contend in the post-trial motion "[t]he Court erred in informing the jury that the defense of insanity was no longer an issue in the case." Under these circumstances, and particularly in light of the strength of the evidence of guilt, any error in the remarks complained of was not of such magnitude as to deny defendant the fair and impartial trial to which he was entitled.

Defendant also contends the State on two occasions elicited improper and prejudicial testimony from witnesses it was examining. The first such occasion occurred when, after telling of how another detective read *Miranda* warnings to defendant, Detective Sergeant Kenneth Anderson went on to testify:

"Q. [State's Attorney Robert Morrow] What happened at that point?

A. [Detective Sergeant Kenneth Anderson] I asked him if he wanted to add anything or change anything from his statement that he had given us the previous day.

Q. All right. Do you recall what he said at that time, if anything?

A. He said that he thought he better talk to a lawyer first.

Q. All right."

This, according to defendant, was improper evidence of defendant's post-arrest silence. The second occasion occurred when the prosecutor, while cross-examining defendant's father, elicited testimony that defendant's father, mother, friends, and relatives raised the money to hire defendant's attorney. Defendant's argument regarding this testimony is that it was an improper attempt to prejudice defendant before the jury "by casting aspersions upon his exercise of his right to counsel of his own choice" and, insofar as the testimony was relevant to the bias of defendant's father and mother as witnesses, it was cumulative. Defendant also asserts the testimony was wholly irrelevant

810

and immaterial to the issues before the jury. The State responds arguing that the two errors asserted were waived, that no error occurred, and that any error would be harmless.

■ It is unnecessary to address the State's claim of waiver or the merits of the issue raised. As discussed previously, the evidence of defendant's guilt was overwhelming, leaving no doubt whatsoever that he murdered James Wright. There can be no reasonable doubt that if the asserted errors had not occurred, the jury would still have found defendant guilty. Consequently, even if we were to agree with defendant on the merits and find error, the error found would be harmless beyond a reasonable doubt. *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824; *People v. Green* (1979), 74 Ill. 2d 444, 386 N.E.2d 272.

The judgment of the circuit court of Kane County is therefore affirmed.

Affirmed.

NASH, P.J., and HOPF, J., concur.