THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CORNELL MOORE, Defendant-Appellant.

First District (2nd Division) Nos. 85—0980, 85—1010 cons.

Opinion filed September 23, 1986.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Thomas V. Gainer, Jr., Dean P. Karlos, James E. Fitzgerald, and Nancy L. Grauer, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

A jury found defendant, Cornell Moore, guilty of rape, deviate sexual assault and robbery. (Ill. Rev. Stat. 1983, ch. 38, pars. 11—1(a), 11—3(a), 18—1(a).) He was sentenced to concurrent terms of natural-life imprisonment as an habitual offender for rape and deviate sexual assault and a concurrent seven-year sentence for robbery. Ill. Rev. Stat. 1983, ch. 38, pars. 33B—1, 1005—5—3(c)(6), 18—1(b).

Defendant appeals contending that: (1) the circuit court erred in refusing to issue tendered instructions on the affirmative defense of insanity after defendant had raised the issue of his sanity at trial; (2) he was denied effective assistance of counsel; and (3) the circuit court erred in denying his request for a psychiatric examination.

At about 6:15 a.m. on Sunday, April 1, 1984, the victim, a pedestrian, was approached by a black man wearing rust colored coat and pants. The man moved directly into her path; she attempted to go around him; he again moved, so that his right hand, in his pocket, touched her stomach, and his left hand grabbed her wrist; he nudged her with his right, pocketed hand, and said "don't start no shit it won't be no shit or else I'll blow your mother fucking brains out." He then forced her into an alley behind the Woodlawn health clinic and robbed her of money and jewelry. He had a beard and mustache, and she later identified defendant as the man.

Defendant then took her down the alley to a basement, forced her to take off her pants and underpants and face the wall, had her bend over and inserted his penis in her rectum. The victim then said, "don't hurt me," and defendant withdrew his penis. He next had her lie on her back, covered her face with her pants and then inserted his penis into her vagina. Finally, he had her kneel on her hands and knees and he then put his penis once again in her vagina and ejaculated.

Defendant then dressed and told his victim to dress also. He ordered her to "stay for fifteen or twenty minutes, or else I'll blow your mother fucking brains out." He left, and the victim left five minutes later and found a police car two blocks away. She described the rapist to the police and the description was transmitted to other police in the area. Defendant was seen by police a few blocks from the basement and was caught following a brief chase. Defendant had money and jewelry in his pockets when arrested, and he was identified by his victim as her rapist. The victim also described the jewelry of which defendant had robbed her and subsequently identified some of the jewelry seized from defendant as the stolen jewelry. She was taken to Billings Memorial Hospital and examined by a physician who found rectal abrasions indicating recent anal trauma. Microanalysis showed spermatozoa in both rectal and vaginal samples taken from the victim, her underpants and the pants of defendant.

Following the presentation of evidence at trial, and prior to closing arguments and the charging of the jury, defendant moved to reopen the defense case in order to allow him to testify. After being cautioned by the court and against the advice of counsel, defendant testified, primarily attempting to assert his need for psychiatric help. His motion for psychiatric evaluation was denied. The defense then submitted insanity instructions which were refused by the court.

The trial continued and defendant was subsequently found guilty and sentenced as an habitual offender to concurrent terms of natural-

life imprisonment for rape and deviate sexual assault and a concurrent seven-year term for robbery. (Ill. Rev. Stat. 1983, ch. 38, pars. 33B—1, 1005—5—3(c)(6), 18—1(b).) He had previously pleaded guilty to rape, robbery and attempted robbery on April 4, 1975; rape and robbery on April 29, 1975; and rape and robbery on June 16, 1978. This appeal follows.

## I

Defendant initially contends that he properly raised the affirmative defense of his insanity at the time that he allegedly committed the offenses charged.

In Illinois defendant's insanity at the time of the alleged offense is an affirmative defense. (Ill. Rev. Stat. 1983, ch. 38, par. 3—2.) Since all men are presumed sane (*People v. Silagy* (1984), 101 Ill. 2d 147, 168, 461 N.E.2d 415, *cert. denied* (1984), 469 U.S. 873, 83 L. Ed. 2d 156, 105 S. Ct. 227; *People v. Redmond* (1974), 59 Ill. 2d 328, 338, 320 N.E.2d 321; *People v. Smothers* (1973), 55 Ill. 2d 172, 174, 302 N.E.2d 324), defendant bears the burden of raising the defense (*People v. Kashney* (1986), 111 Ill. 2d 454, 464, 490 N.E.2d 688; *People v. Silagy* (1984), 101 Ill. 2d 147, 461 N.E.2d 415). Until recently, the State thereafter bore the burden of proving beyond a reasonable doubt that defendant was sane at the time of allegedly committing the crime. (101 Ill. 2d 147, 461 N.E.2d 415; *People v. Redmond* (1974), 59 Ill. 2d 328, 320 N.E.2d 321.) In essence, defendant's sanity, once legitimately put in issue, became another element of the charged offense which had to be proved beyond a reasonable doubt. *People v. Glenn* (1985), 137 Ill. App. 3d 803, 806-07, 484 N.E.2d 1204, *appeal denied* (1986), 111 Ill. 2d 573.

In 1983, however, the General Assembly changed the burden of proof and the burden of proving the insanity defense. (Pub. Act 83—288.) Effective January 1, 1984, the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, pars. 3—2, 6—2) provided:

"Sec. 3—2.
* * *

* * * Affirmative defense. * * * If the affirmative defense of insanity is raised, the defendant bears the burden of proving by a preponderance of evidence his insanity at the time of the offense."

"Sec. 6—2. Insanity.

(a) A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the

criminality of his conduct or to conform his conduct to the requirements of law.

(b) The terms 'mental disease or mental defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.

\* \* \*

(e) When the defense of insanity has been presented during the trial, the burden of proof is on the defendant to prove by a preponderance of the evidence that the defendant is not guilty by reason of insanity. \*\*\*"

Defendant, therefore, no longer bears only the burden of raising an insanity defense but now also bears the additional burden of proving that defense by a preponderance of the evidence.

Defendant does not challenge the constitutional validity of this statute and the United States Supreme Court impliedly validated this burden of proof when it refused to invalidate a statute which required defendants to prove their insanity beyond a reasonable doubt. *Leland v. Oregon* (1952) 343 U.S. 790, 798-99, 96 L. Ed. 1302, 1308-09, 72 S. Ct. 1002, 1007; see also *State v. Korell* (Mont. 1984), 690 P.2d 992, 998-1001 (recognizing validity of Montana statute abolishing the affirmative defense of insanity).

Defendant, to establish his insanity, must prove that, due to mental disease or defect, he lacked substantial capacity to appreciate the criminality of his conduct or to conform that conduct to the requirements of law. (Ill. Rev. Stat. 1983, ch. 38 par. 6—2(a); *People v. Kashney* (1986), 111 Ill. 2d 454, 464-65, 490 N.E.2d 688.) The phrase mental disease or defect does not apply to abnormalities whose sole manifestations are repeated criminal or otherwise antisocial conduct. (Ill. Rev. Stat. 1983, ch. 38, par. 6—2(b); *People v. Smothers* (1973), 55 Ill. 2d 172, 175, 302 N.E.2d 324.) Additionally, our supreme court has recently stated that "[i]nsanity is raised as an affirmative defense when a defendant admits the offense charged but claims that, at the time of the offense, he was insane." (*People v. Kashney* (1986), 111 Ill. 2d 454, 464-65, 490 N.E.2d 688.) The statement that defendant must admit to his commission of the charged offense was not essential to the court's holding and may be viewed as *dicta,* and we may accordingly rely upon earlier pronouncements of the supreme court that a defendant may present seemingly inconsistent defenses; claiming not to have committed the crime and also claiming to be not guilty by reason of insanity. (*People v. Ford* (1968), 39 Ill. 2d 318, 320-21, 235 N.E.2d 576.) In the case *sub judice,* defendant's contention that he did not rape the victim appears primarily premised upon his

ignorance of what occurred and, therefore, any denial or admission of the charged crimes is at least somewhat inconsistent with his position.

Under the pre-1984 insanity defense premised on *People v. Redmond*, defendants were presumed sane and the burden was upon defendants to raise the issue and then to establish a reasonable doubt of their sanity. (*People v. Redmond* (1974), 59 Ill. 2d 328, 338, 320 N.E.2d 321.) Once the issue was raised, by creating a reasonable doubt, defendant was entitled to an insanity instruction. *People v. Mireles* (1979), 79 Ill. App. 3d 173, 200-01, 398 N.E.2d 150, *cert. denied* (1980), 449 U.S. 860, 66 L. Ed. 2d 76, 101 S. Ct. 163; *People v. Rea* (1977), 47 Ill. App. 3d 353, 356-57, 362 N.E.2d 1; *People v. Haun* (1966), 71 Ill. App. 2d 262, 269, 217 N.E.2d 470.

The new statutory standard still presumes defendant's sanity and places the burden of asserting an insanity defense upon him, but now defendant is also required to prove insanity by a preponderance of the evidence. (Ill. Rev. Stat. 1983, ch. 38, pars. 3—2, 6—2(e).) This standard does not necessarily require the giving of an insanity instruction premised on what would have previously sufficed to raise the issue, the establishing of a reasonable doubt, since the burden of proving insanity now rests upon defendant. An insanity instruction is now warranted only if there is sufficient evidence to support a jury's finding of insanity by a preponderance of the evidence. Jury consideration of such an affirmative defense is precluded if the court finds that there was insufficient evidence presented to warrant a reasonable man's belief that defendant had proved the affirmative defense by a preponderance of the evidence.

■ The old standard for the insanity defense essentially required that defendant establish and maintain a reasonable doubt as to his sanity. (*People v. Redmond* (1974), 59 Ill. 2d 328, 337, 320 N.E.2d 321.) At present, defendant must prove it more likely than not that he was insane when he committed the offenses charged. (Ill. Rev. Stat. 1983, ch. 38 pars. 3—2, 6—2(e).) Accordingly, defendants are only entitled to instructions on insanity when they have presented evidence sufficient to warrant a jury's finding in their favor. *People v. Smothers* (1973), 55 Ill. 2d 172, 175, 302 N.E.2d 324; *People v. Rea* (1977), 47 Ill. App. 3d 353, 362 N.E.2d 1.

The only evidence of insanity in the instant case was defendant's own testimony, presented against the advice of counsel and following a motion to reopen the defense case, that his only memory of April 1, 1984, the day of the crime, was of waking at 8 a.m. and eating a breakfast of bacon, eggs and grits. He remembered nothing of his arrest earlier that morning. He also testified that he was first cognizant

of his arrest about a month later when he realized he was in jail.

Concerning his mental condition, defendant testified that he had a serious accident at age 13 involving his head when he fell on some sharp object requiring 38 stitches. The doctor told him at the time that he would have "problems" later in life with his head, "mental problems," which he was having now and had been having since he was 15 years of age. He claimed to be receiving medication which he did not identify. He also testified that he heard "devil's voices," that he sometimes had blackouts lasting about 15 minutes, that he did not remember any of the people that had testified at the trial, and that he did not remember the rust-colored jacket.

Additionally, he told the jury that he had some serious problems and was asking for help. He denied any knowledge of anything that was done to the victim.

Defendant recalled only two of his prior rape convictions and claimed not to have committed the crimes. He also recalled another pending rape case. At the close of his direct testimony, defendant stated:

> "All I can say is—all I can say is that I am sick and I need psychiatric help, evaluation, however you want to put it, which I never got before."

On cross-examination, defendant recalled nothing concerning the rape and at the close of cross-examination, he was allowed to explain his lack of memory, stating that he remembered things sometimes and sometimes did not. He denied that he was a rapist or a Jack the Ripper, but was a person, a human being asking for a little help.

■ Defendant never admitted to the rape and accordingly did not testify that his actions were in any sense beyond his control or that he was unable to appreciate the criminality of his conduct, the statutorily mandated insanity standard. (Ill. Rev. Stat. 1983, ch. 38, par. 6—2(a).) Defendant merely testified that he was unable to control the devil voices, that he suffered 15-minute blackouts and that he needed help. Although all these may go toward demonstrating a mental disease or defect, they do not establish insanity as statutorily defined. He did not describe or otherwise characterize the "devil's voices" or what they said to him, nor contend that the crimes occurred during a 15-minute blackout; rather, he failed to remember the entire month. In essence he took the stand, said he had problems and then invited the jury's speculation and conjecture as to the nature and effect of those problems. The jury was correctly precluded by the circuit court from doing that.

The instruction proffered by the defense was not included in the

record on appeal. In the trial transcript the instruction is identified as Illinois Pattern Jury Instruction, Criminal, No. "[24—]25.01" (Illinois Pattern Jury Instruction, Criminal, No. 24—25.01 (2d ed. 1981) (IPI Criminal 2d). Three supporting instructions are also referred to but not identified. Presumably, those were specific insanity instructions for rape, deviate sexual assault and robbery. (See IPI Criminal 2d No. 24—25.01A.) IPI Criminal 2d No. 24—25.01 provides:

"A person is insane and not criminally responsible for his conduct if at the time of the conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

[Abnormality manifested only by repeated criminal, or otherwise anti-social conduct, is not mental disease or mental defect.]"

The Committee Note states (IPI Criminal 2d No. 24—25.01):

"Give the second paragraph only when the evidence shows repeated criminal or other anti-social conduct. [Citations.] ***"

Since the model instructions predate the 1983 amendments (Pub. Act 83—288) to the Criminal Code of 1961, no reference is made to defendant's burden of proof. In fact, there is no indication in the record that the circuit court, defense counsel or the State's Attorney were aware of the new standard. Since the new statutory requirement imposes a greater burden of proof upon defendant than was imposed by the circuit court, however, the error is harmless to defendant. Defendant did not establish a probability that he was insane at the time of the crimes, or raise a reasonable doubt, or even present some evidence on that issue. He did not sufficiently raise the issue so as to require giving the instructions.

Accordingly, the circuit court's rejection of defendant's insanity instructions was not error.

## II

Defendant next asserts that he was denied effective assistance of counsel at trial. This assertion essentially rests upon whether defense counsel properly explored and pursued an insanity defense.

■ To obtain a new trial premised on the denial of effective assistance of counsel, defendant must show both ineffective assistance and resulting prejudice. *People v. Weir* (1986), 111 Ill. 2d 334, 337, 490 N.E.2d 1; *People v. Del Vecchio* (1985), 105 Ill. 2d 414, 425-26, 475 N.E.2d 840, *cert. denied* (1985), 474 U.S. 883, 88 L. Ed. 2d 173, 106 S. Ct. 204; *People v. Albanese* (1984), 104 Ill. 2d 504, 526-27, 473

N.E.2d 1246, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061; see also *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.

 The alleged ineffective assistance is that he requested a psychiatric examination from counsel four or five times prior to trial, but never received one. On the other hand, defense trial counsel asserted that he had conceived an insanity defense premised upon uncontrollable urges caused by hormone imbalances, a so-called testosterone defense. Trial counsel further stated that he had approached several psychiatrists and a judge concerning the testosterone defense, but found none willing to testify. He had also approached the circuit court's Psychiatric Institute, but found that they did not favor the defense. Defendant was not examined by a psychiatrist prior to trial and no motion was made for such an examination until defendant made it himself after the close of all the evidence, which was denied.

The court, in denying defendant's request relied upon the lack of timeliness in his motion. Later, when defendant testified, he attempted to call his sanity into question but failed. Defendant received a psychiatric examination on March 7, 1985, in order to determine his fitness for sentencing. The psychiatrist, a staff member of the Psychiatric Institute, stated his findings that defendant was mentally fit for sentencing, was able to understand the nature of the charge for which he was being sentenced and was able to cooperate with the court and counsel during the sentencing procedure. The prominent feature during the examination, the psychiatrist testified, was defendant's malingering demeanor. In his opinion there was no evidence of mental illness and should defendant respond to the court in an inappropriate manner, it would be, in his opinion, deliberate and wilful.

There is no indication that the defense intended to pursue a traditional insanity defense premised upon defendant's head injury. Rather, defense strategy appears to have been premised upon its "testosterone defense." As such, the inability to find supporting psychiatric experts defeated the need for psychiatric examination. Defendant first raised the defense after the close of evidence. The circuit court properly denied defendant's motion at that time. Defense counsel's pursuit of the testosterone defense, however, does not necessarily demonstrate that his assistance was ineffective.

As to the second requirement for establishing denial of effective assistance of counsel, resulting prejudice, defendant must establish a reasonable probability that absent his counsel's unprofessional errors, the result would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 694, 80 L. Ed. 2d 674, 678, 104 S. Ct. 2052,

2068; *People v. Weir* (1986), 111 Ill. 2d 334, 338-39, 490 N.E.2d 1.) "A reasonable probability is one sufficient to 'undermine confidence in the outcome.' " *People v. Weir* (1986), 111 Ill. 2d 334, 338-39, 490 N.E.2d 1, quoting *Strickland v. Washington* (1984), 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068.)

■ Here, as in *People v. Weir*, it is difficult to assess the resulting prejudice to defendant. He was effectively precluded from presenting an insanity defense. The only expert evidence in the record is the fitness for sentencing report which found "no evidence of mental illness." The criteria for insanity and fitness for sentencing are not the same, however; nor are they concerned with the same period of time. (Compare Ill. Rev. Stat. 1983, ch. 38, par. 6—2(a) with Ill. Rev. Stat. 1983, ch. 38, par. 104—10.) The disparate standards initially belie the application of this report to demonstrating a lack of resulting prejudice. Nevertheless, the finding that there is no evidence of mental illness goes to insanity as well, and defendant, as in *Weir*, has failed to demonstrate any probability that the trial would have resulted differently.

■ Other defects complained of similarly failed to have prejudiced defendant. They concern defense counsel's failure to lay a proper foundation for impeachment, presenting evidence unfavorable to defendant and failing to object to prosecution questions concerning defendant's prior prison sentences. Defendant does not present any authority that such asserted defects rise to a level of ineffective assistance of counsel warranting reversal, and the argument is unconvincing.

### III

■ Lastly, defendant contends that it was error for the circuit court to deny his post-trial motion for a sanity evaluation in conjunction with the court-ordered, fitness-for-sentencing examination. The court denied the defense motion, ruling that sanity was no longer an issue.

Illinois recognizes a defendant's right to psychiatric examination. (*People v. Watson* (1966), 36 Ill. 2d 228, 221 N.E.2d 645.) Similarly, the United States Supreme Court recently so held in *Ake v. Oklahoma* (1980), 470 U.S. 68, 84, 84 L. Ed. 2d 53, 66-67, 105 S. Ct. 1087, 1097. Here, however, the defense only requested psychiatric evaluation after the close of evidence and in a post-trial motion, a situation not analogous to that presented in *Ake*. The State here does not contend that defendants are never entitled to State-provided psychiatric evaluation, rather, that defendant's request was untimely.

Defendant also relies on *People v. Allen* (1984), 101 Ill. 2d 24, 461 N.E.2d 337, in which our supreme court ordered a sanity evaluation of a defendant although it was only first requested after a plea of guilty had been entered and defendant had been sentenced. (*People v. Allen* (1984), 101 Ill. 2d 24, 25-26, 36-37, 461 N.E.2d 337.) In doing so, the court noted that it was because of the unusual circumstances including a finding that defendant was unfit to stand trial and an assortment of motions by a progression of defense counsel for psychological examinations, which were refused by defendant. (*People v. Allen* (1984), 101 Ill. 2d 24, 27-29, 36-37, 461 N.E.2d 337.) None of those circumstances are present in this case and defendant's argument is unconvincing.

Accordingly, defendant's convictions are affirmed.

Affirmed.

STAMOS and SCARIANO, JJ., concur.