THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT KEGLEY, Defendant-Appellant.

Second District   No. 2—86—1019

Opinion filed October 7, 1988.—Rehearing denied November 15, 1988.

336

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WOODWARD delivered the opinion of the court:

Defendant Robert Kegley was charged by indictment with home invasion, residential burglary, attempted kidnapping, unlawful restraint, battery, and aggravated battery. After a jury trial, defendant was found guilty of home invasion, attempted kidnapping, unlawful restraint, and battery, and he was subsequently sentenced to prison for 60 years on the home invasion charge and 10 years for attempted

kidnapping. This appeal followed. We reverse and remand.

On appeal, defendant argues that (1) the trial court committed reversible error by refusing to appoint a psychiatrist to evaluate him; (2) the trial court's refusal to permit a challenge to a key witness' credibility constituted reversible error; (3) the trial judge's unjustified antagonism to defense counsel precluded counsel's efforts to present a defense; (4) certain victim impact statements were wrongly allowed into evidence at the sentencing hearing; and (5) the imposition of an extended term for attempted kidnapping violated the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—2(a)).

Defendant initially argues that the trial court's failure to appoint a psychiatrist to evaluate both his fitness to stand trial and his mental condition at the time of the alleged incident left him virtually defenseless at trial. In discussing the issue, we shall focus primarily on the psychiatric examination to determine defendant's mental condition at the time of the offense.

On March 25, 1986, defendant was arrested outside the apartment of Sandra Dyer, who had been assaulted therein. Arresting officers testified that, while attempting to escape, defendant demanded on a number of occasions that they shoot him. After subduing defendant, police took him to the lockup, where he exhibited some irrational behavior, i.e., hitting his head and shoulders against the cell's walls and bars. Drug paraphernalia was found in defendant's clothing. Defendant's urine tested positively for cocaine and alcohol, the latter measuring .124. The physician administering the tests observed needle marks on defendant's left arm.

On April 23, 1986, defendant appeared before Judge John Hughes and requested representation by the public defender's office. Defendant testified that he was without funds to retain a lawyer, and the court appointed the public defender's office to represent him. He was initially represented by assistant public defenders David Keefe and Kevin Milner.

Public defender Kathleen Keller (Keller) first appeared before Judge William Block on July 9, 1986, when certain charges were severed from those tried in the instant case. The parties with public defender Keller representing the defendant next appeared before Judge Hughes on July 16, 1986, for a status hearing. On August 8, 1986, the parties appeared before Judge Hughes, who granted the State's motion to obtain blood and hair samples from the defendant.

On September 3, defense counsel filed her answer to the State's motion for discovery, which alluded to the possible assertion of the defense of intoxication and drugged condition pursuant to section 6—

3(a)(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 6—3(a)(b)).

The matter was set for trial on September 8, 1986. On this date, the court determined that the instant case was number two on the trial call and would be on a day-to-day status as to its inception.

Also, on September 8, 1986, defendant's counsel filed a motion asking for a psychiatric examination for purposes of determining his fitness to stand trial and sanity at the time of the alleged offenses. In her motion, Keller asserted that she had interviewed defendant seven times and that he had become "an intense religionist to such exaggerated extent that the fervor borders on the irrational." She also interviewed defendant's family and friends and reviewed the prosecution's discovery answers, and represented to the court that an exam by a court-appointed psychiatrist was necessary. The motion was presented to Judge Hughes that day. Expressing irritation over Keller's failure to file the motion sooner, the judge stated that the motion for psychiatric examination would be heard "before we're ready for the trial."

In court on the following day, Keller indicated that she was having some difficulty in obtaining copies of certain of defendant's medical reports even though subpoenas had been issued. Judge Hughes agreed to issue an order to obtain the reports, and the order was issued on the next day.

On September 10, 1986, Keller filed an addendum to her motion for a psychiatric examination. The addendum asserted that three days prior, Keller learned that defendant had been hospitalized at the Elgin State Mental Hospital pursuant to court order sometime in 1973; that defendant had been treated several times at the Alcohol Treatment Center in Waukegan; that he had been treated at the Lake County Mental Health Center on two occasions between 1981-84; and that he had been hospitalized at St. Therese Hospital's psychiatric ward on a number of occasions between 1972-74. The addendum further asserted that at the time of his arrest, defendant acted erratically in that he had requested to be shot by arresting officers and threw himself against the bars and walls of his cell and that he also had a history of arrests involving abnormal behavior. The addendum also stated that defendant might assert the defense of insanity.

Directly prior to trial, Keller argued her motion before the trial court. In support of the motion's timeliness, Keller stated on the fifth or sixth of September that she had received supplemental answers to discovery by the State. She had reviewed over 200 pages of discovery material. Since being assigned to the case, she had been on trial for an unspecified time and had been on vacation. Keller further stated

that in interviewing a number of people, including defendant, she had discovered, in the days prior to trial, defendant's volatile psychological states.

After the State stated its objection to a psychiatric examination, the following colloquy took place.

"THE COURT: *** All the things that are mentioned here, I don't see anything to indicate at all that at the present time or that any time since he was there, that he had a mental aberration or anything else which would prevent him from having a fair trial or cause him to be unable to understand the charges against him and the reason for his arrest and the reason for being charged with the offense.

MISS KELLER: If you would allow me, I could put my witnesses on.

THE COURT: No, I am not. I think that I have a duty to determine whether there is a *bona fide* basis, and I say there is not on the face of this addendum to the motion, and there is nothing on the motion itself, and I will deny the motion.

MISS KELLER: Without allowing me to—

THE COURT: That's correct.

MISS KELLER:—to put my witnesses on?

THE COURT: That's correct.

MISS KELLER: Without allowing me to make arguments to the Court?

THE COURT: That's right."

Keller renewed her request for a psychiatric examination later on a number of occasions during the trial. On one occasion, she indicated that defendant had expressed suicidal desires. The court denied each of her requests, including a motion for a mistrial based on the failure to appoint a psychiatrist to examine defendant.

■■ Defendant initially contends that a person accused of an offense must be given a full opportunity to present a defense and offer witnesses to establish said defense. (*People v. Manion* (1977), 67 Ill. 2d 564.) Illinois has long recognized that a defendant may be entitled to funds to hire an expert witness where expert testimony is deemed critical to a proper defense. *People v. Glover* (1971), 49 Ill. 2d 78.

Defendant further asserts that in *People v. Watson* (1966), 36 Ill. 2d 228, our supreme court noted a distinction between the right to call witnesses and the right to have witnesses paid for by the government, but acknowledged that, in certain situations, a lack of funds may prevent the calling of witnesses and thereby prevent a defense. "Thus," the court stated, "although the defendant is afforded the

shadow of the right to call witnesses [by his indigency], he is deprived of the substance." 36 Ill. 2d at 233.

Defendant then cites *People v. Nichols* (1979), 70 Ill. App. 3d 748, in which the philosophy espoused in *Watson* and *Glover* was applied to the context of psychiatric evaluation. In *Nichols*, the defendant had announced his reliance on the insanity defense in his pretrial discovery answer. Though the trial court had ordered a fitness evaluation, it refused to provide funds for obtaining a psychiatric examination to resolve the question of sanity at the time of the offense. The denial was held to be constitutional error because the sanity exam was crucial to the defense.

Defendant maintains that any lingering question regarding the need for an appointment of a psychiatrist to assist a defendant to raise an insanity defense was settled in *Ake v. Oklahoma* (1985), 470 U.S. 68, 84 L. Ed. 2d 53, 105 S. Ct. 1087. In *Ake*, the trial court had, *sua sponte*, ordered a fitness examination after defendant exhibited bizarre symptoms at his arraignment. The defendant was subsequently found unfit to stand trial, and he was committed to an institution until his condition was stabilized through medication. (*Ake*, 470 U.S. at 71, 84 L. Ed. 2d at 58, 105 S. Ct. at 1090.) At a pretrial conference, the defense attorney informed the court that the defense of insanity would be raised and that the defendant needed, but could not afford, a psychiatric examination on the specific question of sanity at the time of the offense. The court denied the requested appointment. At trial, the attorney tried to present an insanity defense, calling the psychiatrist who had earlier examined the defendant regarding fitness to stand trial. However, because the previous exam was limited in scope, no testimony as to defendant's mental condition at the time of the offense could be offered. No expert testimony on this question was presented by either side. While the jury was instructed as to insanity, it returned a guilty verdict. 470 U.S. at 72-73, 84 L. Ed. 2d at 59, 105 S. Ct at 1091.

■ The Supreme Court observed that when the State makes a defendant's mental condition relevant to criminal culpability and punishment, the assistance of a psychiatrist may well be crucial to the ability to defend one's self. Although lay witnesses can offer testimony in support of an insanity defense, psychiatrists' ability to analyze, gather information, and draw conclusions based on oftentimes elusive or deceptive symptoms makes them much more valuable witnesses on the insanity question than laypersons.

The Court held

"that when a defendant has made a preliminary showing that

his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue, if the defendant cannot otherwise afford one." (470 U.S. at 74, 84 L. Ed. 2d at 60, 105 S. Ct. at 1091-92.)

In so holding, the Court rejected the argument that contrary interests superseded the rights of the accused.

"[I]t is difficult to identify any interest of the State, other than in its economy, that weighs against recognition of this right. The State's interest in prevailing at trial—unlike that of a private litigant—is necessarily tempered by its interest in the fair and accurate adjudication of criminal cases." 470 U.S. at 79, 84 L. Ed. 2d at 63, 105 S. Ct. at 1094.

Defendant contends that the *Ake* decision renders the trial court's denial of a psychiatric examination reversible error inasmuch as the defense's pleadings clearly voiced the need for a psychiatric examination.

Defendant acknowledges that a request for a psychiatric evaluation can be untimely, as in *People v. Moore* (1986), 147 Ill. App. 3d 881, where the request was held to be untimely when made at the close of the evidence. Defendant contends here that, as in *Ake* and *Nichols*, defense counsel indicated prior to trial an intent to raise the insanity defense and that the request for a psychiatric examination had preceded the trial's commencement.

Conversely, the State argues that the trial court did not abuse its discretion in refusing to appoint a psychiatrist to evaluate his sanity at the time of the offense. The State asserts that defendant's motion for a psychiatric examination was not timely, failed to give cogent reasons justifying such untimeliness, and failed to provide the court with sufficient reasons to place defendant's sanity into question.

■ The State notes that the purpose of discovery is to eliminate unfair surprise and to allow the opposing party to establish the truth or falsity of the defense. (107 Ill. 2d R. 413(d).) It argues the fact that defendant on September 3, 1986, and September 10, 1986, respectively, stated he might assert a defense of intoxication, and an insanity defense constituted unfair surprise. The State further argues that the public defender's office, assigned to the case on March 25, 1986, had ample opportunity to determine defendant's capacity to stand trial and his mental condition at the time of the alleged offense. Defendant's pretrial services bond report dated March 26, 1986, indicates that he had drug and alcohol, as well as psychiatric, problems. Police reports setting forth the behavior of the defendant at the time

of the alleged attack were provided to defense counsel on June 8. The State concludes that defendant's motion for appointment of a psychiatrist was untimely and that defendant offered no persuasive reasons for excusing his tardily disclosed defense, on which the request for a psychiatrist was based. Further, the State contends that defendant's motion for psychiatric examination was little more than a delaying tactic.

The State next asserts that the instant case can be distinguished from *Ake v. Oklahoma* (1985), 470 U.S. 68, 84 L. Ed. 2d 53, 105 S. Ct. 1087, because the record shows no support for defendant's claim of indigence.

■ As stated above, *Ake* holds that if an indigent person, prior to trial, makes a preliminary showing of his insanity at the time of the offense, the State must assure his access to a competent psychiatrist. We find that under the present facts, *Ake* is controlling.

There is no question that defendant was indigent at the trial's beginning. In September 1986, he had been incarcerated for six months. When requesting the trial court to appoint the public defender's office to represent him, defendant testified that he had no savings, real estate, personal property, or anything else of value and that he owed a $17,000 hospital bill. The trial court appointed the public defender's office to represent him. There is nothing to indicate that defendant's financial condition improved in the months following appointment of counsel. Thus, the State's argument, that *Ake* does not apply to this case because defendant is able to pay for counsel, is not supported by the record.

Next, the court decided that there was no indication of present or relevant past mental aberration sufficient to support defendant's motion and denied defendant's motion for a psychiatric examination. Even without the additional witnesses offered by defense counsel, there was sufficient evidence before the court of relevant psychological problems and substance abuse to meet *Ake*'s requirement of a preliminary showing that defendant's sanity at the time of the offense would be a significant factor at trial.

■ The State's argument that defendant's motion was untimely is unpersuasive. The motion for a psychiatric examination was made in open court on September 8, two days prior to trial. The trial court delayed addressing the motion until directly before the trial commenced. As in *Ake,* defense counsel submitted the motion prior to trial, which makes it timely. Further, the State merely contends that the motion was untimely and deleterious without expounding on exactly how the motion's timing was deleterious to it other than the

possible inconvenience caused by a delay. Allowing defendant the means to assert his constitutionally grounded defense, *i.e.*, granting the motion for a psychiatric exam, clearly outweighs any inconvenience to the State.

Next, the State's assertion that the motion was simply a delaying tactic does not jibe with the facts. Defendant's long, documented history of emotional difficulties negates the State's argument that defense counsel was merely attempting to delay the trial. Also, the fact that defendant had already been incarcerated for six months and was incarcerated at the time the relevant motion was made further undercuts this argument, *i.e.*, defendant had little to gain from a spurious delay.

In failing to appoint a psychiatrist to determine defendant's mental condition at the time the offense occurred, the trial court denied defendant his constitutionally guaranteed right to due process. (*Ake*, 470 U.S. at 83, 84 L. Ed. 2d at 66, 105 S. Ct. at 1096.) This was clearly an abuse of the trial court's discretion.

Accordingly, we reverse the judgment entered on the jury's verdict and remand this case for further proceedings consistent with this opinion. Specifically, the trial court shall appoint a psychiatrist to examine defendant. Because of our determination of this first issue, we do not need to address defendant's other arguments.

Reversed and remanded.

LINDBERG, P.J., and UNVERZAGT, J., concur.