THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
HOPE QUAY, Defendant-Appellant.

Fourth District No. 4—88—0171

Opinion filed November 3, 1988.

Daniel D. Yuhas and David Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SPITZ delivered the opinion of the court:

By indictment filed October 9, 1986, in the circuit court of McLean County, defendant Hope Quay was charged with aggravated battery and resisting a peace officer. (Ill. Rev. Stat. 1985, ch. 38, pars. 12—4, 31—1.) On December 5, 1986, defendant was found unfit to stand trial and was committed to the Department of Mental Health and Developmental Disabilities. On November 6, 1987, defendant filed a motion for discharge hearing since it had been determined she was not likely to regain fitness within one year from the date of the original finding of unfitness.

The discharge hearing was held February 5, 1988. The parties stipulated that Roger Potter would testify in accordance with his grand jury testimony. That testimony indicated that on September 12,

1986, Potter and Mark Mattingly were riding bicycles on a public sidewalk in downtown Bloomington, Illinois, at approximately 4 p.m., when Mattingly stopped to talk to defendant. Defendant picked up a broken beer bottle, and Potter asked her to put it down. Defendant then struck Potter on the hand with the beer bottle. The parties also stipulated that Officer Tony Becker would testify that when he attempted to arrest defendant, she kicked at him and grabbed for his pistol.

The parties further stipulated that Dr. Mortimer Beck, a psychiatrist, would testify that he examined defendant on November 14, 1986, and concluded that at the time of this offense she suffered from acute paranoid schizophrenia, a mental illness which left her unable to conform her conduct to the requirements of the law or to appreciate the criminality of her acts. In Dr. Beck's opinion, defendant met both the legal and psychiatric definitions of insanity on the date of the offense because she suffered from a mental disease which deprived her of the capacity to be responsible for her actions.

The trial court found that the State had presented sufficient evidence to establish beyond a reasonable doubt that the offenses had occurred, but that there was insufficient evidence to establish that defendant was not guilty by reason of insanity. The trial court refused to enter an order of acquittal, and defendant was remanded to the Department of Mental Health and Developmental Disabilities for a period of six months. From this order of the trial court, defendant appeals.

■ Whenever it is determined it is not substantially probable a defendant will attain fitness to stand trial within one year of the finding of unfitness, defendant may move for a discharge hearing. (Ill. Rev. Stat. 1987, ch. 38, par. 104—23(a).) At the discharge hearing, which is conducted without a jury, evidence may be introduced by the parties relevant to the issue of defendant's guilt. (Ill. Rev. Stat. 1987, ch. 38, par. 104—25(a).) If the court finds the evidence insufficient to establish guilt beyond a reasonable doubt, a judgment of acquittal shall be returned. (Ill. Rev. Stat. 1987, ch. 38, par. 104—25(b).) If the defendant is found to be not guilty by reason of insanity, then the defendant shall be acquitted and further proceedings had pursuant to section 5—2—4 of the Unified Code of Corrections. (Ill. Rev. Stat. 1987, ch. 38, pars. 104—25(c), 1005—2—4.) However, if the hearing does not result in an acquittal, the trial court may remand the defendant for further treatment and extend the original one-year period for determining defendant's fitness to stand trial. Ill. Rev. Stat. 1987, ch. 38, par. 104—25(d).

■■ ■ In any such hearing where the defendant has raised the affirmative defense of insanity, the defendant has the burden of proving by a preponderance of the evidence that she was insane at the time of the offense in order for the court to find defendant not guilty by reason of insanity. (Ill. Rev. Stat. 1987, ch. 38, pars. 3—2(b), 6—2(e).) Since defendant is presumed sane, the question before this court is whether the evidence presented to the trial court at the discharge hearing sufficiently overcame the presumption of sanity as to establish, by a preponderance of the evidence, that defendant was insane at the time of the offenses. (*People v. Moore* (1986), 147 Ill. App. 3d 881, 498 N.E.2d 701.) A defendant is determined to be insane and, therefore, "not criminally responsible for [his] conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law." Ill. Rev. Stat. 1985, ch. 38, par. 6—2(a).

■■ Initially, we note defendant has cited several cases involving analysis of evidence under the prior law, which required the State to prove defendant sane at the time of the offense beyond a reasonable doubt once the defendant had raised the issue of insanity and created a reasonable doubt as to defendant's sanity. (See *People v. Moore* (1986), 147 Ill. App. 3d 881, 498 N.E.2d 701 (for a comparison of the present law and the pre-1984 insanity defense).) Because of the difference in the burden of proof, the cases defendant cites to this court which were decided under the prior law have little value to a determination of the sufficiency of the evidence in the case at bar. Defendant cannot merely raise a reasonable doubt as to her sanity. Similarly, the cases cited by defendant involving a finding of guilty but mentally ill (GBMI) are not applicable here. In cases in which the State seeks a GBMI finding, the State has the burden of proving defendant sane at the time of the offense beyond a reasonable doubt. (For a comparison of the standards relating to the insanity defense and GBMI, see *People v. Fierer* (1988), 124 Ill. 2d 176.)

■■ On the other hand, the change in the law does raise a valid consideration which must be resolved before the case at bar can be decided. Under the prior law, once a trial court found defendant to be sane at the time of the offense, a reviewing court would refuse to overturn the finding of the trial court unless the finding was so improbable or unsatisfactory as to create a reasonable doubt as to defendant's sanity. (*People v. Skorka* (1986), 147 Ill. App. 3d 976, 498 N.E.2d 607.) However, since the burden of proof has been modified from "beyond reasonable doubt" to "a preponderance of the evi-

dence," then it would also appear to be appropriate for the standard of review to change to a determination of whether the trial court's finding was against the manifest weight of the evidence.

■■ According to defendant, the only evidence concerning defendant's mental condition at the time of the offenses was the expert opinion of Dr. Beck. In deciding sanity, the court is not required to accept the opinion of the expert (*People v. Martin* (1980), 87 Ill. App. 3d 77, 409 N.E.2d 114), and the trial court can look to the reasons given and the factual details relied upon in reaching the conclusions to which the expert testified. *People v. Stamps* (1977), 52 Ill. App. 3d 320, 367 N.E.2d 543.

■■ In his report to the court, Dr. Beck did conclude defendant's condition at the time of the offense on September 12, 1986, was probably the same as it was at the time of his 15-minute examination of defendant on November 8, 1986, to wit: severely psychotic and mentally out of control due to a severe paranoid illness. However, Dr. Beck goes on to state that while he is certain of his opinion regarding defendant's fitness to stand trial, he indicates less certainty as to the opinion on insanity at the time of the offense and recommends research of the records of defendant's past mental health care to bolster his certainty as to that opinion. The record does not establish that the suggested review of prior psychiatric history was ever accomplished. As a result, the defendant failed to carry her burden of proof and the finding of the trial court is not against the manifest weight of the evidence.

Accordingly, the order of the circuit court of McLean County is affirmed.

Affirmed.

GREEN, P.J., and LUND, J., concur.